# United States Court of Appeals for the Federal Circuit

---

**GILBERT P. HYATT,**

*Plaintiff-Appellant,*

**v.**

**DAVID KAPPOS, DIRECTOR, PATENT AND TRADEMARK OFFICE,**

*Defendant-Appellee.*

---

2007-1066

---

Appeal from the United States District Court for the District of Columbia in case No. 03-CV-901, Judge Henry H. Kennedy, Jr.

---

Decided: November 8, 2010

---

AARON M. PANNER, Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C., of Washington, DC, argued for plaintiff-appellant on rehearing en banc. Of counsel on the brief were MICHAEL L. MARTINEZ, Crowell & Moring LLP, of Washington, DC, and GREGORY L. ROTH, Law Offices of Gregory L. Roth, of La Palma, California. On the initial brief were MICHAEL L. MARTINEZ and MICHAEL I. COE, Crowell & Moring LLP, of Washington, DC. Of counsel on the brief was GREGORY L. ROTH, Law Offices of

Gregory L. Roth, of La Palma, California. Of counsel was KENNETH C. BASS, III, Sterne, Kessler, Goldstein & Fox P.L.L.C., of Washington, DC, and J. ROBERT CHAMBERS, Wood Herron & Evans, LLP, of Cincinnati, Ohio.

BETH S. BRINKMANN, Deputy Assistant Attorney General, Appellate Staff, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee on rehearing en banc. With her on the brief were TONY WEST, Assistant Attorney General, and SCOTT R. MCINTOSH and MARK R. FREEMAN, Attorneys. Of counsel on the brief were RAYMOND T. CHEN, Solicitor, and ROBERT J. MCMANUS and THOMAS W. KRAUSE, Associate Solicitors, Office of the Solicitor, United States Patent and Trademark Office, of Arlington, Virginia. On initial brief were STEPHEN WALSH, Acting Solicitor, and ROBERT J. MCMANUS and WILLIAM G. JENKS, Associate Solicitors, Office of the Solicitor, United States Patent and Trademark Office, of Arlington, Virginia. Of counsel were RAYMOND T. CHEN, Acting Solicitor, and THOMAS W. KRAUSE, Associate Solicitor.

MAXIM H. WALDBAUM, Schiff Hardin LLP, of New York, New York for amicus curiae Federation Internationale Des Conseils en Propriete Industrielle on rehearing en banc.

MARK J. ABATE, New York Intellectual Property Law Association, of New York, New York, for amicus curiae New York Intellectual Property Law Association on rehearing en banc.

DANIEL B. RAVICHER, Benjamin N. Cardozo School of Law, of New York, New York, for amicus curiae Public Patent Foundation on rehearing en banc.

HERBERT C. WAMSLEY, Intellectual Property Owners Association, of Washington, DC, for amicus curiae Intellectual Property Owners Association on rehearing en banc. On the brief were DOUGLAS K. NORMAN and KEVIN H. RHODES, Intellectual Property Owners Association, of Washington, DC; and ROBERT M. ISACKSON, NICHOLAS H. LAM, and JACOB A. SNOW, Orrick, Herrington & Sutcliffe LLP, of New York, New York.

LAUREN A. DEGNAN, Fish & Richardson, P.C., of Washington, DC, for amicus curiae Intel Corporation on rehearing en banc. With her on the brief was JOHN A. DRAGSETH, of Minneapolis, Minnesota. Of counsel on the brief was HARRY F. MANBECK, JR., Rothwell, Figg, Ernst & Manbeck P.C., of Washington, DC.

ANN M. MCCRACKIN, Franklin Pierce Law Center, of Concord, New Hampshire, for amicus curiae Franklin Pierce Law Center on rehearing en banc. With her on the brief was J. JEFFREY HAWLEY.

_____

Before RADER, *Chief Judge*, NEWMAN, LOURIE, BRYSON, GAJARSA, LINN, DYK, PROST, and MOORE, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* MOORE, in which *Chief Judge* RADER and *Circuit Judges* LOURIE, BRYSON, LINN, and PROST join.

Concurring-in-part, dissenting-in-part opinion filed by *Circuit Judge* NEWMAN.

Dissenting opinion filed by *Circuit Judge* DYK, in which *Circuit Judge* GAJARSA joins.

MOORE, *Circuit Judge.*

Under the patent laws, a patent applicant who is dissatisfied with the decision of the Board of Patent Appeals and Interferences (Board) regarding his application may choose one of two paths. The applicant may appeal the Board's decision to the Court of Appeals for the Federal Circuit, which will review the Board's decision on the record that was before the U.S. Patent and Trademark Office (Patent Office). Alternatively, the applicant may file a civil action in district court, and the court will determine whether the applicant "is entitled to receive a patent for his invention . . . as the facts in the case may appear." 35 U.S.C. § 145. This case presents the issue of what limitations exist on an applicant's right to introduce new evidence in a § 145 civil action.

We have characterized this civil action as a "hybrid" action. It is not an appeal; the language of § 145 expressly distinguishes its civil action from a direct appeal, and the Supreme Court has recognized that an applicant may introduce new evidence before the district court that was not presented to the Patent Office. However, it is also not an entirely de novo proceeding. Issues that were not considered by the Patent Office cannot be raised with the district court in most circumstances, and if no new evidence is introduced, the court reviews the action on the administrative record, subject to the court/agency standard of review. The particular significance of a § 145 civil action is that it affords an applicant the opportunity to introduce new evidence after the close of the administrative proceedings—and once an applicant introduces new evidence on an issue, the district court reviews that issue de novo. Thus, an applicant's ability to introduce new evidence is the hallmark of a § 145 action. It is the primary factor that distinguishes a civil action under § 145 from an appeal.

We hold that 35 U.S.C. § 145 imposes no limitation on an applicant's right to introduce new evidence before the district court, apart from the evidentiary limitations applicable to all civil actions contained in the Federal Rules of Evidence and Federal Rules of Civil Procedure. In doing so, we reject the Director's proposal that only "new evidence that could not reasonably have been provided to the agency in the first instance" is admissible in a § 145 action. Dir. Br. at 8. While the proceedings before the Patent Office do not limit the admissibility of new evidence in the district court, they may be considered by the district court if they cast doubt on the reliability of late-produced evidence, as with inconsistent statements or new recollections of previously forgotten events. As with any evidence introduced in a civil action, the district court as factfinder may give less weight to evidence introduced by an applicant in a § 145 action if the district court questions its credibility or reliability. Because the district court abused its discretion when it excluded Mr. Hyatt's declaration under the wrong legal standard, we vacate the decision of the district court and remand.

## I.    BACKGROUND

Gilbert P. Hyatt is the sole named inventor of U.S. Patent Application No. 08/471,702 (the '702 application), titled "Improved Memory Architecture Having a Multiple Buffer Output Arrangement." The '702 application relates to a computerized display system for processing image information.

Mr. Hyatt filed the '702 application on June 6, 1995. As filed, the '702 application included a 238-page specification, 40 pages of figures, and 15 claims; it originally claimed priority through a chain of related applications to an application filed in 1984 and was later amended to

claim priority to a 1975 application. Mr. Hyatt filed several preliminary amendments in which he amended the drawings and specification and added 74 new claims.

The examiner issued a nonfinal office action rejecting all pending claims on various grounds, including abandonment, obviousness, and double patenting. Mr. Hyatt filed a response, in which he traversed the abandonment and obviousness rejections and amended the claims to distinguish over the claims of his copending applications. Mr. Hyatt also cancelled various claims and added new ones, bringing the total number of claims to 117.

The examiner informed Mr. Hyatt that the response was incomplete because Mr. Hyatt had failed to identify the novelty of and support in the specification for his amended and added claims. Mr. Hyatt identified features of the new claims that allegedly distinguished over the prior art. Mr. Hyatt also listed pages of the specification that contained representative support for each of the distinguishing features of the claims.

The examiner issued a final office action rejecting all 117 claims. He identified particular categories of claimed subject matter that he concluded lacked support in the specification and rejected all claims under 35 U.S.C. § 112, first paragraph, for failure to comply with the written description and enablement requirements. He also rejected all claims for both obviousness-type and *Schneller*-type double patenting over eight references. Finally, he rejected nine claims as being anticipated and seven as being obvious over a combination of three references. All told, the examiner issued 2546 separate rejections of Mr. Hyatt's 117 claims.

Mr. Hyatt appealed to the Board, addressing every one of the examiner's grounds for rejection in a 129-page appeal brief. With respect to the written description rejections, Mr. Hyatt argued that the limitations identified by the examiner as lacking sufficient written description had "extensive basis" in the specification. J.A. 10830. Mr. Hyatt included a table (Table 1) that listed representative pages in the specification containing the "terminology" objected to by the examiner. J.A.10832. For certain terms, Mr. Hyatt also identified figures and page ranges of the specification that described the relevant terms.

The Board reversed all of the examiner's rejections for obvious-type and *Schneller*-type double patenting. The Board also reversed all of the anticipation and obviousness rejections. With respect to the written description rejections, the Board noted that merely pointing to the occurrence of isolated words in the specification—as Mr. Hyatt had done in Table I—did not adequately establish that the specification contained written description for the particular combination of elements that made up each limitation. Still, after performing its own review of the specification, as it is required to do, the Board reversed all of the examiner's written description and enablement rejections with respect to 38 of the pending claims and many of these rejections for the other 79 claims, finding that the features identified by the examiner as lacking written description were either adequately disclosed or were not claimed. Thus, Mr. Hyatt prevailed on over 93% of the examiner's rejections at the Board level. The Board affirmed at least one of the examiner's written description and enablement rejections with respect to each of 79 claims. Mr. Hyatt filed a Request for Rehearing; the Board dismissed the Request without considering the merits, finding that Mr. Hyatt raised new arguments that

could have been presented earlier to either the examiner or the Board.

Following the Board's decision dismissing his Request for Rehearing, Mr. Hyatt filed a civil action in the United States District Court for the District of Columbia against the Director of the Patent Office (Director) pursuant to 35 U.S.C. § 145. The Director moved for summary judgment that the pending claims were invalid for failure to comply with the written description requirement. Mr. Hyatt opposed the motion, arguing that genuine issues of material fact existed to preclude summary judgment as to written description. In support of his opposition, Mr. Hyatt submitted a written declaration in which he identified portions of the specification that one of skill in the art would understand to describe the limitations challenged by the Director. The Director argued that the court should not consider Mr. Hyatt's declaration because he did not previously submit it to the examiner or the Board.

The district court determined that it could not consider Mr. Hyatt's declaration. *Hyatt v. Dudas*, 2005 U.S. Dist. LEXIS 45319, at *12 (D.D.C. Sept. 30, 2005). The court found that the Board's written description rejections were substantively identical to, albeit more detailed than, the rejections issued by the examiner. *Id.* at *19. Because Mr. Hyatt's declaration was directed to those written description rejections, the court concluded that he could have presented the declaration earlier, "certainly by the time his patent application was considered by the Board." *Id.* at *24. Finding that Mr. Hyatt had no explanation for why he failed to offer his declaration during the proceedings before the Board, the court determined that "[Mr.] Hyatt's failure to explain why he didn't submit his declaration earlier is negligent, and the district court

need not consider evidence negligently submitted after the end of administrative proceedings." *Id.* at *26.

Mr. Hyatt did not submit any evidence to the district court apart from his declaration, which the court excluded. Therefore, the court reviewed the Board's fact findings for substantial evidence and granted summary judgment to the Director that the pending claims were unpatentable for failure to comply with the written description requirement. *Id.* at *27.

Mr. Hyatt appealed, and a divided panel of this court affirmed. *Hyatt v. Doll*, 576 F.3d 1246 (Fed. Cir. 2009). The panel majority acknowledged that "it is beyond question that in appropriate circumstances new evidence may be submitted to the district court in a § 145 action (subject, at least, to the Federal Rules of Evidence)." *Id.* at 1266. However, the majority stated that there was a "general practice" among federal courts "in some circumstances to exclude evidence which a party could and should have introduced before the Patent Office but did not despite an obligation to do so." *Id.* at 1266. The majority also concluded that the Administrative Procedure Act (APA) imposed restrictions on the admission of new evidence in a § 145 action. *Id.* at 1270. The majority noted that judicial review of an agency action is generally restricted to the agency record and that the Patent Office is an agency whose findings of fact must be reviewed according to the APA's court/agency standard of review. *Id.* at 1267, 1269. Therefore, the majority determined that although review in a § 145 action is "[o]f course . . . not strictly confined to the agency record," "neither are [§ 145] proceedings wholly de novo." *Id.* at 1269.

Turning to the merits of Mr. Hyatt's case, the majority stated that although Mr. Hyatt could have identified

the portions in the specification that provided written description support for the disputed limitations any time after the office action, he "refused to cooperate, even though he necessarily possessed the information the examiner sought by the time he filed his application." *Id.* Although the majority acknowledged the district court's finding that Mr. Hyatt's failure to submit the evidence in his declaration earlier was negligent, the majority determined that "it is clear from the record that Hyatt *willfully* refused to provide evidence in his possession in response to a valid action by the examiner." *Id.* (emphasis added). In light of Mr. Hyatt's "willful non-cooperation," the majority held that the district court did not abuse its discretion in excluding the declaration. *Id.* The majority then affirmed the court's grant of summary judgment. *Id.* at 1279.

The dissenting judge disagreed, arguing that the district court abused its discretion by applying the wrong legal test for the admissibility of the evidence. The dissent argued that the plain language, legislative history, and Supreme Court jurisprudence relating to § 145 establish that an applicant's right to present new evidence in a § 145 action is subject only to the Federal Rules of Evidence and Civil Procedure. *Id.* at 1280-81, 1284. Further, the dissent disputed the propriety of determining on appeal that Mr. Hyatt willfully withheld his declaration.

We agreed to rehear the appeal en banc and vacated the judgment of the panel. *Hyatt v. Kappos*, 366 Fed. Appx. 170 (Fed. Cir. 2010). We asked the parties to direct their briefs to the following questions:

(a) Are there any limitations on the admissibility of evidence in section 145 proceedings? In particular-

(i) Does the Administrative Procedure Act require review on the agency record in proceedings pursuant to section 145?

(ii) Does section 145 provide for a de novo proceeding in the district court?

(iii) If section 145 does not provide for a de novo proceeding in the district court, what limitations exist on the presentation of new evidence before the district court?

(b) Did the district court properly exclude the Hyatt declaration?

In addition to the parties' briefs, we received seven amicus briefs. Amicus briefs submitted by amici Public Patent Foundation, American Intellectual Property Law Association (AIPLA), Fédération Internationale des Conseils en Propriété Industrielle, New York Intellectual Property Law Association (NYIPLA), and Intellectual Property Owners Association (IPO) opposed the panel majority's imposition of limitations on the evidence admissible in a § 145 action. Amici Intel Corporation and the Franklin Pierce Law Center submitted briefs arguing in favor of greater limitations on the admissibility of evidence in § 145 actions, though neither argued in favor of the standard proposed by the Patent Office in this case.

We heard oral argument on July 8, 2010. For the reasons below, we hold that the only limitations on the admissibility of evidence applicable to a § 145 proceeding are the limitations imposed by the Federal Rules of Evidence and Federal Rules of Civil Procedure. Therefore, we hold that the district court applied the wrong legal standard for the admissibility of evidence in a § 145

proceeding and abused its discretion when it excluded Mr. Hyatt's declaration.

## II.   DISCUSSION

On rehearing, Mr. Hyatt argues that the only limitations on the admissibility of new evidence in a § 145 proceeding are the rules of evidence generally applicable to all civil actions.  Mr. Hyatt asserts that the legislative history of § 145 and its predecessor statute shows that Congress intended to provide a genuine alternative to an on-the-record appeal that permits an applicant to bring a new case, complete with new evidence, to show that his patent should issue.  Mr. Hyatt asserts that case law from the Supreme Court and this circuit supports his interpretation.  Mr. Hyatt also argues that nothing in the APA limits the introduction of new evidence in a § 145 proceeding.  Therefore, Mr. Hyatt contends that the district court acted improperly in excluding his declaration.

The Director, in contrast, argues that § 145 should be interpreted to prohibit an applicant from introducing new evidence before the district court unless the applicant could not reasonably have provided that evidence to the Patent Office in the first instance.  The Director asserts that the proceeding authorized by the predecessor statute of § 145 was effectively a suit to set aside a judgment and that under established rules of equity practice, a court presiding over such a suit would have excluded evidence that the plaintiff failed, without reasonable excuse, to present previously.  Further, the Director argues that APA principles and various policy considerations weigh in favor of limiting an applicant's right to introduce new evidence.  The Director contends that because Mr. Hyatt could have presented the declaration to the examiner and

to the Board prior to instigating the present action, the district court correctly excluded the declaration.

A.

Section 145, titled "Civil action to obtain patent," provides as follows:

> An applicant dissatisfied with the decision of the Board of Patent Appeals and Interferences in an appeal under section 134(a) of this title may, *unless appeal has been taken* to the United States Court of Appeals for the Federal Circuit, *have remedy by civil action* against the Director in the United States District Court for the District of Columbia if commenced within such time after such decision, not less than sixty days, as the Director appoints. The court may adjudge that such applicant is entitled to receive a patent for his invention, as specified in any of his claims involved in the decision of the Board of Patent Appeals and Interferences, *as the facts in the case may appear* and such adjudication shall authorize the Director to issue such patent on compliance with the requirements of law. All the expenses of the proceedings shall be paid by the applicant.

35 U.S.C. § 145 (emphases added).

On its face, § 145 authorizes a civil action in district court by which an applicant can prove his entitlement to a patent. The statute provides no indication that this civil action is somehow different from a customary civil action. In particular, § 145 does not provide that unique rules of evidence, separate from or supplementary to the Federal Rules of Evidence that apply to all civil actions, control to

limit an applicant's ability to introduce new evidence before the district court. Additionally, § 145 makes clear that the civil action is distinct from an appeal, in which the applicant would be limited to the record before the Patent Office. *See* 35 U.S.C. § 144. Pursuant to the plain language of § 145, this civil action does not merely afford judicial review of agency action. Rather, the statute directs that the district court may "adjudge that such applicant is entitled to receive a patent for his invention . . . as the facts in the case may appear."

B.

The lengthy legislative history of § 145 and its predecessor statute, which dates back nearly to the creation of the Patent Office, shows that Congress intended to provide for a civil action in which an applicant would be free to introduce new evidence. Congress established the Patent Office and the patent examination scheme in 1836. Act of July 4, 1836, ch. 357, 5 Stat. 117 (1836 Act). The 1836 Act provided that the Commissioner of Patents would determine whether each applicant was entitled to a patent on his application. *Id.* §§ 1, 7, 5 Stat. 117, 120. An applicant dissatisfied with the Commissioner's decision regarding his application could appeal to a board of three examiners, which could overturn the Commissioner's decision in full or in part. *Id.* § 7, 5 Stat. 121.

The decision of the board of examiners was final in ex parte cases. *Id.*; *see also* P.J. Federico, *Evolution of Patent Office Appeals*, 22 J. Pat. Off. Soc'y 838, 840 (1940). However, in cases where the board rejected an application on the ground that it interfered with an unexpired patent, the 1836 Act provided that the applicant "may have remedy by bill in equity." *Id.* § 16, 5 Stat. 123-24. A bill in equity was the written mechanism that

commenced an original suit in a court of equity. *See* Shipman, *Handbook of the Law of Equity Pleading* § 101, p. 168 (West 1897). Courts with jurisdiction over an applicant's bill in equity could "adjudge that such applicant is entitled . . . to have and receive a patent for his invention . . . as the fact of priority of right or invention shall in any such case be made to appear." 1836 Act, § 16, 5 Stat. 124. Three years later, Congress extended an applicant's remedy by bill in equity beyond interferences to "all cases where patents are refused for any reason whatever." Act of Mar. 3, 1839, ch. 88, § 10, 5 Stat. 353, 354.

Congress made various changes to the appeal structure within the Patent Office over the next few decades. None of these changes affected an applicant's separate remedy by bill in equity, which continued to be available. In 1870, Congress passed an act to "revise, consolidate, and amend the Statutes relating to Patents and Copyrights." Act of July 8, 1870, ch. 230, 16 Stat. 198 (1870 Act). The 1870 Act provided for a three-tier appeal process within the Patent Office. An applicant whose application was rejected by the primary examiner could appeal to a board of examiners-in-chief. *Id.* § 46, 16 Stat. 204-05. Similarly, a party to an interference could appeal an adverse decision by the examiner in charge of interferences to the board. *Id.* If the applicant or party to the interference was dissatisfied with the board's decision, he could appeal first to the Commissioner of Patents and then to the supreme court of the District of Columbia. *Id.* §§ 47-48, 16 Stat. 205.

Pursuant to the 1870 Act, after all of these appeals were exhausted, the applicant could still seek remedy by bill in equity:

> [W]henever a patent on application is refused . . . the applicant may have remedy by bill in equity; and the court . . . may adjudge that such applicant is entitled, according to law, to receive a patent for his invention . . . as the facts in the case may appear. . . . [A]nd all the expenses of the proceeding shall be paid by the applicant, whether the final decision is in his favor or not.

*Id.* § 52.  Congress later recodified this section as § 4915 of the Revised Statutes.

Congress significantly modified the patent application review process in 1927, primarily in response to criticism regarding the length and complexity of the process.  Act of March 2, 1927, ch. 273, 44 Stat. 1335 (1927 Act); *see also* Federico, 22 J. Pat. Off. Soc'y at 941.[1]  Various schemes were proposed to Congress for simplifying the process.  Some proposals advocated eliminating one of the appeals; others advocated doing away with the bill in equity under § 4915.  *Id.* at 941-42.  The continued viability of § 4915 was a particularly disputed issue, and Congress heard extensive testimony regarding the merits of the remedy by bill in equity in the hearings that preceded the Act.

---

[1]    As P.J. Frederico explained in 1940, the "bill in equity" which in 1839 applied to both ex parte and interference cases "was thus at this time [1839] given the scope which has been maintained to the present day."  Federico, 22 J. Pat. Off. Soc'y at 935.  While Congress considered and changed the appeals process in 1927, the language of § 4915 in the bills debated in February 1927 and December 1927 was identical, and was ultimately enacted in § 4915 including the requirement that "the record in the Patent Office shall be admitted . . . without prejudice, however, to the right of the parties to take further testimony."

Those who favored retaining § 4915 argued that an applicant's right to introduce evidence that had not been before the Patent Office created a truly distinct, and therefore valuable, alternative to an on-the-record appeal. Charles E. Howson, Chairman of the Committee on Patent Law Revision for the American Bar Association, explained the significance of § 4915 as follows:

> Section 4915 has always been regarded by the patent bar, or those experienced in patent practice, as the final check on the Patent Office to enable a deserving inventor to get his just deserts if everything else fails. The advantage of section 4915 is that it enables the party in interest, desiring to obtain a patent, to take evidence in a court or tribunal whose business it is to try issues of facts *and make up a record in addition to that he has been enabled to furnish the examiners in the Patent Office*, and therefore get before a court of competent jurisdiction everything connected with his rights and every fact connected with his patent; in other words, *have before him everything that courts in the country have before them in infringement cases.*

*To Amend Section 52 of Judicial Code and Other Statutes Affecting Procedure in Patent Office: Hearings on H.R. 6252 and H.R. 7087 Before the H. Comm. on Patents*, 69th Cong., 1st Sess. 20-21 (1926) (*To Amend Section 52*) (emphases added). Another proponent of § 4915, A.C. Paul, the Chairman of the Patent Section of the Legislation Committee of the American Bar Association, testified that he understood § 4915 to grant an applicant the right to "have the case start *de novo* after the decision of the board." *Id.* at 81. Mr. Paul distinguished the bill in equity under § 4915 from an on-the-record appeal, ex-

plaining that "the difference [between § 4915 and an appeal] would be then if we went to the court of appeals by an appeal the decision must be based upon the same record. If we go into a court of equity the *parties may use the record that they have in the Patent Office and may supplement it by additional evidence.*" *Id.* (emphasis added). Another committee member testified that the original suit under § 4915 allowed an inventor to strengthen his case by enabling an applicant to "take testimony and bring out all the facts pertinent and have an absolutely full hearing in the matter." *Id.* at 13 (statement of Henry Huxley, Member of the Patent Section of the Legislation Committee of the American Bar Association). Congressman Albert Vestal similarly explained that "if a party feels aggrieved, he can bring his suit in the equity court [under § 4915], but it is not an appeal. It is the bringing of a new suit." *Id.* at 36; *see also id.* at 66 (under § 4915, "you may go to a court of equity and take testimony in open court and use the testimony in the Patent Office or both and have it as a proceeding de novo, not appeal with the presumption in favor of what has been done, but where you stand and the court listens to what you have to say and decides it on the merits") (statement of Otto R. Barnett, President, American Patent Law Association, Chicago, Ill.).

The opponents of § 4915 also recognized that the remedy by bill in equity allowed an applicant to freely introduce new evidence in the district court. Indeed, they objected to the provision on precisely this basis. For example, the Commissioner of Patents testified that § 4915 entitled an applicant to "start de novo . . . and build up a new record" in district court. *Id.* at 80 (statement of Hon. Thomas E. Robertson, Commissioner of Patents). He cautioned that § 4915 permitted applicants to "bring[] in evidence that they could have brought in before [the

Patent Office] but did not." *Id.* at 81. The Commissioner also recognized that this new action allowed the relitigation of matters already decided by the Patent Office, permitting the applicant "to build up a new record for dragging an opponent through a second time." *Id.* at 80; *see also id.* at 81 ("after dragging a man through all this procedure which you have said is so complicated and burdensome, [an applicant can] start de novo in court, and bring in testimony not taken the first time"). The former Assistant Commissioner similarly opposed § 4915, arguing that § 4915 "should be cut out entirely for ex parte applications" to force an applicant to introduce "all the testimony pertinent to his case" to the Patent Office. *Id.* at 76 (statement of Karl Fenning, former Assistant Commissioner of Patents).

Thus, proponents and opponents of § 4915 alike recognized, and conveyed to Congress, that the remedy by bill in equity allowed an applicant to introduce new evidence in the district court, regardless of whether that evidence had been provided to the Patent Office in earlier proceedings. Nothing in the Congressional record leading up to the 1927 Act indicates that any member of Congress or the bar contemplated any limit on this right apart from the limits imposed by the normal rules of equity practice.

Despite being presented with the policy reasons for eliminating the remedy by bill in equity, Congress chose to retain § 4915. 1927 Act, § 3, 44 Stat. 1335-36. However, Congress gave applicants a right to choose between an appeal and the remedy by bill in equity. An applicant who chose to appeal an adverse decision by the Patent Office thus "waive[d] his right to proceed under section 4915." *Id.* § 8, 44 Stat. 1336.

Congress bifurcated § 4915 into two provisions in 1952, sections 145 and 146 of Title 35 of the United States Code.[2]  Act of July 19, 1952, ch. 950, §§ 145-46, 66 Stat. 792, 803 (1952 Act).  Section 145, which controlled ex parte proceedings, provided that an "applicant dissatisfied with the decision of the Board of Appeals may unless appeal has been taken to the United States Court of Customs and Patent Appeals have *remedy by civil action* against the Commissioner."  *Id.* § 145, 66 Stat. 803 (emphasis added).  Section 146, which applied to interferences, similarly provided for parties to an interference to have a "remedy by civil action" and that "the record in the Patent and Trademark Office shall be admitted . . . without prejudice to the right of the parties to take further testimony."  *Id.* § 146, 66 Stat. 803.  Congress stressed that the 1952 Act made "no fundamental change in the various appeals and other review of Patent Office action."  *See* S. Rep. No. 82-1979 (1952), reprinted in 1952 U.S.C.C.A.N. 2394, 2400.  Subsequent changes to § 145 have not altered the substantive application of the statute in any way relevant to our analysis.

Though the Director does not directly dispute any of the relevant legislative history, he nonetheless argues that Congress intended for new evidence to be admitted in § 145 actions only where it could not reasonably have been presented to the agency in the first instance.  Dir. Br. at 28.  The Director points to pre-1952 decisions of some federal courts which he characterizes as having

---

[2]    As sections 145 and 146 both stem from § 4915, we have characterized these sections as "parallel provisions" to be treated similarly.  *Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1345 (Fed. Cir. 2000).  We see no rationale that would justify distinguishing between interferences and ex parte actions for admissibility purposes.

"excluded or discounted evidence which the applicant had failed, without reasonable excuse, to present to the agency." *Id.* at 26. According to the Director, Congress must have intended to codify this "longstanding" interpretation when Congress reenacted § 4915 without substantive change as § 145. *Id.* at 28. The flaw with the Director's claim is inherent in his argument—Congress could not have implicitly adopted the different approaches various courts took with regard to an admissibility standard.

The Director is correct that, prior to the 1952 Act, some regional circuits excluded or gave less weight to evidence based on an applicant's conduct before the Patent Office. The courts did so under an array of inconsistent standards (including willful withholding, intentional suppression, and bad faith). *See, e.g.*, *Barrett Co. v. Koppers Co.*, 22 F.2d 395, 397 (3d Cir. 1927) (holding that a when a party intentionally withholds evidence within his possession before the Patent Office, he may not later introduce that evidence in a suit under § 4915); *Dowling v. Jones*, 67 F.2d 537, 538 (2d Cir. 1933) (explaining that in *Barrett* "the Third Circuit refused to consider evidence which the inventor had deliberately suppressed in the interference, and used broader language than the exact situation required . . . However, it does not follow that it would have extended the doctrine to evidence not suppressed, but merely neglected through the plaintiff's slackness in preparation."); *Knutson v. Gallsworthy*, 164 F.2d 497, 509 (D.C. Cir. 1947) ("[I]f no bad faith on the part of the profferer is involved, such as deliberate withholding for some tactical reason, the court could receive the evidence.").[3] In many of the cases cited by the Direc-

---

[3]    Post-1952 cases added to the hodgepodge of standards. *See, e.g.*, *Standard Oil Co. v. Montedison, S.p.A.*,

tor, the court both admitted and considered the applicant's new evidence. *See, e.g.*, *Globe-Union, Inc. v. Chicago Tel. Supply Co.*, 103 F.2d 722, 727 (7th Cir. 1939) ("We can not escape the strength and the compelling influence of the additional evidence that was adduced in the district court.") Some courts held that an applicant's failure to previously introduce the evidence before the Patent Office goes to the weight of the evidence, not to its admissibility. *E.g.*, *Western Electric Co. v. Fowler*, 177 F. 224, 228-29 (7th Cir. 1910); *Standard Cartridge Co. v. Peters Cartridge Co.*, 77 F. 630, 638 (6th Cir. 1896). As we explain in greater detail below, when failure to introduce the evidence earlier casts doubt as to its credibility or reliability, we believe this is the correct approach.

We are not persuaded by the Director's argument that Congress intended that only evidence that could not have reasonably been presented to the Patent Office in the first instance is admissible in § 145 proceedings. In view of the

---

664 F.2d 356, 376 (3d Cir. 1981) (rejecting the argument that the district court should have required the party to explain why it was offering evidence for the first time before the district court and holding that "new expert testimony is clearly admissible in a section 146 action without such justification"); *Velsicol Chem. Co. v. Monsanto Co.*, 579 F.2d 1038 (7th Cir. 1978) (adopting a reasonably diligent standard); *Heil Co. v. Snyder Indus. Inc.*, 763 F. Supp. 422, 426 (D. Neb. 1991) (holding that new evidence is admissible subject only to the rules of evidence). Our court previously recognized: "We are aware that this provision has received varying interpretations in the circuits. In our view, since an action under 35 U.S.C. § 146 has the hybrid nature of an appeal and a trial de novo, the statute authorizes the district court to accept all proffered testimony on issues raised by the parties during the proceedings below or by the board's decision." *Case v. CPC Int'l, Inc.*, 730 F.2d 745, 752 (Fed. Cir. 1984).

language of the statute and the extensive legislative
history, we agree with Mr. Hyatt that Congress intended
that applicants would be free to introduce new evidence in
§ 145 proceedings subject only to the rules applicable to
all civil actions, the Federal Rules of Evidence and the
Federal Rules of Civil Procedure.

## C.

The Director does not dispute that § 145, like its
predecessor provisions, permits applicants to introduce
new evidence in the district court proceedings. *See, e.g.*,
Dir. Br. at 9, 12, 18. However, the Director contends that
the applicant is only allowed to introduce new evidence
that "the applicant could not reasonably have provided to
the agency in the first instance." *Id.* at 9. The Director
argues that this limitation stems from the rules of equity
practice applicable to § 4915 actions, which would have
prohibited an applicant from introducing new evidence
except in limited circumstances. The Director also asserts
that the APA and various policy considerations operate to
impose additional limitations on an applicant's right to
introduce new evidence. We address each of these argu-
ments in turn.

## 1.

The Director argues that the rules of equity practice
barred an applicant from introducing evidence in a § 4915
suit if the applicant failed, without reasonable excuse, to
provide the evidence to the Patent Office in the first
instance. The Director relies for this proposition on
*Morgan v. Daniels*, 153 U.S. 120 (1894), where the Su-
preme Court characterized a suit under § 4915 as "some-
thing in the nature of a suit to set aside a judgment." *Id.*

at 124. The Director argues that a suit to set aside a judgment is a specific type of bill in equity used to seek reversal of a prior decree or judgment and was called a "bill of review." The Director explains that a court presented with a bill of review to overturn a judgment would not consider any new evidence unless the plaintiff could not have obtained the evidence before the first trial without reasonable diligence. *See* Shipman, *supra*, at § 101, p. 168. The Director argues that the evidentiary constraints applicable to a bill of review applied to actions under § 4915 and, therefore, asserts that an applicant could not introduce any new evidence in a § 4915 action unless he could not reasonably have introduced it to the Patent Office in the first instance.

There are several problems with the Director's reliance on *Morgan* and the analogy to a bill of review. The Supreme Court's decision in *Morgan* does not provide support for the Director's "reasonable excuse" admissibility standard. In fact, *Morgan* does not relate to the admissibility of new evidence at all: the parties in that case did not seek to introduce any new evidence before the Circuit Court. 153 U.S. at 122. Instead, when the Supreme Court indicated that the suit under § 4915 was "something in the nature of a suit to set aside a judgment," it was referring to the standard of review applicable to Patent Office fact findings when no new evidence is introduced in the district court. The Supreme Court considered what "rule . . . should control the [reviewing] court in the determination of this case." *Id.* at 123. The Court observed that the Circuit Court, which had required the plaintiff to provide "a clear and undoubted preponderance of proof," apparently applied the standard of review used by "an appellate court in reviewing findings of fact made by the trial court." *Id.* at 123. "The [*Morgan*] Court, in other words, reasoned strongly that a

court/court review standard is *not* proper [for a court reviewing Patent Office fact findings]. . . And its reasoning makes clear that it meant those words to stand for the court/agency review standard." *Dickinson v. Zurko*, 527 U.S. 150, 159-60 (1999).

Thus, *Morgan* is a case about what standard of review ought to apply when the district court decides whether an applicant is entitled to a patent on exactly the same record that was before the Patent Office. When no new evidence is introduced, the § 145 action is "something in the nature of a suit to set aside a judgment," and the district court reviews the Patent Office fact findings for substantial evidence (i.e., according to the court/agency standard of review). *Morgan* offers no guidance on the scope of admissibility of evidence in a § 4915 proceeding. There are, however, other Supreme Court cases that have spoken to the admissibility of evidence in these types of proceedings. In *Butterworth v. Hoe*, 112 U.S. 50 (1884), the Supreme Court explained:

> It is thereby provided [in § 4915] that the applicant may have remedy by bill in equity. This means a proceeding in a court of the United States having original equity jurisdiction under the patent laws, *according to the ordinary course of equity practice and procedure.* It is not a technical appeal from the patent-office, like that authorized in section 4911, confined to the case as made in the record of that office, but is prepared and heard upon *all competent evidence adduced* and *upon the whole merits.*

*Id.* at 61 (emphasis added).

The *Butterworth* Court identified three circuit court cases as exemplifying "the uniform and correct practice in the Circuit Courts" with respect to suits under § 4915. 112 U.S. at 61. In each of these cases, the Circuit Court explicitly recognized that a § 4915 suit was to be heard upon all competent evidence that the parties chose to introduce, regardless of whether the evidence was or could have been provided to the Patent Office. Evidence was "competent" for admissibility purposes so long as it complied with the "rules and practice of a court of equity." *See In re Squire*, 22 F. Cas. 1015, 1016 (C.C.E.D. Mo. 1877) ("Either party, therefore, is at liberty to introduce additional evidence, or rather, to speak more accurately, the hearing is altogether independent of that before the commissioner, and takes place on such testimony as the parties may see fit to produce agreeably to the rules and practice of a court of equity."); *Butler v. Shaw*, 21 F. 321, 327 (C.C.D. Mass. 1884) ("[§ 4915] contains no provision requiring the case to be heard upon the evidence produced before the commissioner . . . and, as has been held in this and other circuits, the court may receive new evidence, and has the same powers as in other cases in equity"); *Whipple v. Miner*, 15 F. 117, 118 (C.C.D. Mass. 1883) ("[§ 4915] is, plainly, an independent, original jurisdiction which is given to the courts"). Admitting evidence in accordance with the "ordinary course of equity practice and procedure" is admitting evidence in accordance with the Federal Rules of Evidence and Civil Procedure.

The Supreme Court has consistently recognized that new evidence may be introduced in these district court proceedings. *See, e.g.*, *Gandy v. Marble*, 122 U.S. 432, 439 (1887) (explaining that the § 4915 suit in equity was "not a technical appeal from the Patent Office, nor confined to the case as made in the record on that office"); *Hoover Co. v. Coe*, 325 U.S. 79, 83 (1945) (explaining that the bill in

equity in a § 4915 action afforded applicants "a formal trial . . . on proof which may include evidence not presented in the Patent Office"). No Supreme Court case has ever placed any limitations on the admissibility of evidence in a § 145 or § 4915 proceeding apart from the ordinary rules applicable to all civil actions. To the contrary, the Supreme Court observed that the remedy by bill in equity provided by § 4915 "sav[ed] to litigants *the option* of producing new evidence in a court." *Hoover Co.*, 325 U.S. at 87. Most recently, in *Zurko*, the Supreme Court stated that "[Section 145] *permits* the disappointed applicant to present to the court evidence that the applicant did not present to the PTO. The presence of such new or different evidence makes a factfinder of the district judge." 527 U.S. at 164. Our court has likewise held that a § 145 applicant is "entitled to" and may "choose to" to introduce new evidence in the district court proceedings. *See, e.g.*, *Mazzari v. Rogan*, 323 F.3d 1000, 1004-05 (Fed. Cir. 2003) ("A section 145 review . . . affords the applicant an opportunity to present additional evidence or argue the previous evidence afresh" and "[i]f the parties *choose to* present additional evidence to the district court . . . the district court would make de novo factual findings.") (emphasis added); *Fregeau v. Mossinghoff*, 776 F.2d 1034, 1037 (Fed. Cir. 1985) ("The [§145] proceeding, however, is not simply an appeal since the parties are *entitled to* submit additional evidence.") (emphasis added).

To the extent that the Supreme Court precedent offers guidance on the admissibility of evidence in these proceedings, it indicates that all competent evidence is admissible subject only to the ordinary course of equity practice and procedure, which is the Federal Rules of Evidence and Civil Procedure that are applicable to all civil actions. There is no support for the Director's pro-

posed standard, which would allow new evidence only if the evidence could not reasonably have been provided to the Patent Office.

The Director's argument also fails because the bill in equity authorized by § 4915 is not a bill in review. The Director is correct in his characterization of the admissibility rules that would apply if a § 145 proceeding was nothing more than a bill of review. As the Director points out, a party filing a bill of review could introduce new evidence only if that evidence "could not have been discovered and presented by the exercise of due diligence before the decree in question was made." Shipman, *supra*, at § 216; *see also Beard v. Burts*, 95 U.S. 434, 436 (1877). However, the bill in equity authorized by § 4915 is not a bill of review. A bill in equity was the written mechanism that began a judicial proceeding in any court of equity. *See* 1 Street, *Federal Equity Practice* § 135 (1909). A bill in equity could be either an original bill, which began "an independent suit in equity unconnected with any other previous or pending suit in the same court," or a "dependent" bill, which "relate[d] to some matter already litigated in the court by the same parties." *Id.* § 141, § 142. A bill of review was a particular type of dependent bill. *Id.* at § 146.

The bill in equity authorized by § 4915 is fundamentally different from a bill of review. Although the § 4915 action is "in fact, and necessarily, a part of the application for a patent," *Gandy*, 122 U.S. at 439, it is not a bill of review. A bill of review was a mechanism by which a court could reverse its own decree. 2 Street, *Federal Equity Practice* § 2121 (1909) ("that a bill of review will lie *only in the court where the decree to be reversed was rendered is subject to no exception whatever*") (emphasis added). The Supreme Court explained the distinction in

*Barrow v. Hunton*, 99 U.S. 80 (1878): a bill in equity authorized "the investigation of a new case arising upon new facts, although having relation to the validity of an actual judgment or decree," while a bill of review involved "a mere revision of errors and irregularities, or of the legality and correctness of the judgments and decrees." *Id.* at 82-83. Because the bill in equity under § 4915 was not a bill of review, the evidentiary constraints peculiar to a bill of review do not control the admissibility of evidence in a § 145 civil action. Rather, the action is a civil action in which the district court is authorized to "adjudge that such applicant is entitled to receive a patent for his invention . . . as the facts of the case may appear." 35 U.S.C. § 145. While a § 145 proceeding is not completely independent from the prosecution process in the Patent Office, neither is it comparable to a bill of review.

Certainly, the proceedings before the Patent Office remain relevant in a § 145 action. As we explained in *Fregeau*, "in the absence of additional evidence affecting a particular finding," the district court must apply the court/agency standard of review to that fact finding. 776 F.2d at 1038. This deferential standard of review applies in recognition that the fact findings were made by the Patent Office—the knowledgeable agency charged with assessing patentability. "On the other hand, where new evidence is presented to the district court on a disputed fact question, a *de novo* finding will be necessary to take such evidence into account together with the evidence before the board." *Id.* We have also concluded that issues (and evidence relating to new issues) that were not raised in the Patent Office proceedings generally may not be raised in a § 145 proceeding. *See Conservolite, Inc. v. Widmayer*, 21 F.3d 1098, 1102 (Fed. Cir. 1994) (listing circumstances in which new issues may be raised before the district court). Moreover, as we observed in *Fregeau,*

in adjudicating entitlement to a patent, the district court must consider the record before the Patent Office as well as any new evidence admitted by the applicant. 776 F.2d at 1038. Although the Patent Office proceedings do impact § 145 proceedings in these various ways, we conclude that, consonant with the language of the statute, legislative history, and Supreme Court precedent, the only limitations on the admissibility of evidence in § 145 proceedings (for issues raised before the Patent Office) are the Federal Rules of Evidence and Civil Procedure.

Although we reject the Director's proposed restriction on admissibility, the district court may consider the proceedings before and findings of the Patent Office in deciding what weight to afford an applicant's newly-admitted evidence. As with any evidence introduced in a civil action, the weight given to evidence introduced by an applicant in a § 145 action falls within the discretion of the district court. Should the facts of a particular case cast suspicion on new evidence that an applicant failed to introduce before the Patent Office, the district court in a § 145 action would be within its discretion to give that evidence less weight. Indeed, as discussed above, courts have considered an applicant's failure to introduce evidence before the Patent Office in determining what weight to afford to the evidence. *See Standard Cartridge Co.*, 77 F. at 638 (concluding that the evidentiary weight of new witness testimony on oral declarations supposedly made by the patentee who died and thus lost all opportunity to explain or deny was "much impaired from the fact that . . . it was not introduced during the interference proceedings"); *Western Electric Co.*, 177 F. at 228-29 (finding new recollections unconvincing: "And how comes it that the testimony of these witnesses, at this later date, comes out with so much greater definiteness than it came out at the earlier date, when, under ordinary circum-

stances, the event, being much more recent, ought to have been fresher in the witnesses' minds?") The practice of giving less weight to evidence whose reliability is impacted by an applicant's failure, without explanation, to provide it to the Patent Office, is entirely proper, and this practice is fully consistent with the rule that we announce today.

Quite separate from the Director's proposal, the dissent would have us rely on *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 414-20 (1971) to hold that the only new evidence that we should allow is that which the applicant could not bring to the Patent Office due to the inadequacies of the Patent Office's procedures. Dissent 7-9. First, the Director expressly rejects the applicability of *Overton Park* to § 145. Dir. Br. 19, n.4 ("We do not contend that an applicant's ability to introduce new evidence under Section 145 is limited to circumstances in which 'agency factfinding procedures are inadequate.'" citing *Overton Park*). Additionally, the statute in question in *Overton Park* only provided for "judicial review" of agency action. 401 U.S. at 410. Section 145 specifically permits a "civil action" where the district court may adjudge entitlement to a patent "as the facts in the case may appear." Where the statute permits a "civil action" in relation to agency actions, the Supreme Court has held that this amounts to a trial de novo. *See Chandler v. Roudebush*, 425 U.S. 840, 845-46, 862 (1976) ("Here, by contrast, there is 'specific statutory authorization' of a district court 'civil action,' which both the plain language of the statute and the legislative history reveal to be a trial de novo."). Here, the language of the statute and legislative history support the admission of new evidence in § 145 actions subject only to the Federal Rules of Evidence and Civil Procedure.

2.

With respect to the Director's APA argument, the Director does not assert that the APA controls the admissibility of evidence in a § 145 action.  To the contrary, the Director consistently acknowledges throughout his brief that new evidence is admissible in a § 145 action—unlike a typical APA action, in which judicial review is strictly limited to the administrative record.  The Director's argument instead is that when no new evidence is admitted in a § 145 action, the district court must review the fact findings of the Patent Office on the administrative record and subject to the APA.

This is an uncontroversial proposition: it is well-settled that a reviewing court must apply the APA's court/agency standard of review to Patent Office fact findings when no new evidence is admitted in a § 145 action.  If the parties to a § 145 action do not introduce any new evidence before the district court, the court reviews the case on the same record presented to the agency and the reviewing court must apply the APA's substantial evidence standard to Patent Office fact findings.  *See Mazzari*, 323 F.3d at 1005.

But when a party to a § 145 action does introduce new evidence, the court's review is no longer limited to the administrative record.  Instead, the court must consider the new evidence in addition to the record, and "[t]he presence of such new or different evidence makes a fact-finder of the district judge."  *Zurko*, 527 U.S. at 164. Because the court must determine the weight and import of this new evidence, we have held that the district court in a § 145 action must make de novo fact findings with respect to factual issues to which the new evidence relates.  *Fregeau*, 776 F.2d at 1038 ("where new evidence is

presented to the district court on a disputed fact question, a *de novo* finding will be necessary to take such evidence into account together with the evidence before the board"); *see also Mazzari*, 323 F.3d at 1005 ("if the parties choose to present additional evidence to the district court [§ 145 action] . . . the district court would make *de novo* factual findings if the evidence is conflicting [with the administrative record]"). The Director does not dispute that these standards of review apply in a § 145 action.

At most, the Director argues that the principles of deference to agency fact finding inherent in the APA scheme would tend to support more restrictions on the admissibility of evidence. However, this deference is already embodied in the standard of review applicable in a § 145 action. When the court reviews a case on the administrative record—that is, when no party introduces new evidence—the court applies the APA standard of review to Patent Office fact findings. *Mazzari*, 323 F.3d at 1005. When new evidence is introduced, the court acts as a factfinder with respect to that new evidence and would make de novo fact findings if the evidence conflicts with any related Patent Office finding. *Id.*; *see also Zurko*, 527 U.S. at 164. However, the court must still consider the administrative record in making its fact findings; we have made clear that the court's de novo finding must "take [new] evidence into account together with the evidence before the board." *Fregeau*, 776 F.2d at 1038. Therefore, the dual standards of review applicable in a § 145 action maintain an appropriate level of deference to agency findings, while preserving to the court its role as factfinder with respect to new evidence.

3.

Finally, the Director presents various policy considerations in support of its proposal that evidence is not admissible unless it could not have reasonably been presented to the Patent Office first. The Director first argues that requiring plaintiffs to completely present all arguments and evidence to the agency in the first instance protects agency authority and promotes judicial efficiency. Although we agree that encouraging full disclosure to administrative tribunals is sound policy, Congress—not the Federal Circuit—must decide how best to do this. Congress heard extensive testimony on the advantages and disadvantages of providing applicants with a civil action to obtain a patent. In fact, Congress heard testimony on this very issue: the former Assistant Commissioner of Patents argued that § 4915 "should be cut out entirely for ex parte applications," to force an applicant to introduce "all the testimony pertinent to his case" to the Patent Office. *To Amend Section 52*, 69th Cong., 1st Sess., at 76. This was a policy decision committed to the sole discretion of Congress; we may not replace Congress' judgment with our own.

The Director asserts that if we do not limit an applicant's right to introduce new evidence in a § 145 action, applicants will inevitably choose this route of review over a direct appeal under § 141 or will withhold evidence from the Patent Office to avoid generating adverse prosecution history. To deter applicants from exactly the type of procedural gaming that concerns the Director, Congress imposed on the applicant the heavy economic burden of paying "[a]ll the expenses of the proceedings" regardless of the outcome. 35 U.S.C. § 145. An applicant has every incentive to provide the Patent Office with the best evi-

dence in its possession, to obtain a patent as quickly and inexpensively as possible. "It would be counterintuitive for an applicant to deliberately withhold non-cumulative evidence that would help persuade the BPAI to reverse the examiner's rejection, and instead . . . present it later on in a civil action when the party (as plaintiff) would be obligated to pay all the expenses -- including the defendant PTO's expenses." NYIPLA Br. at 13; *see also* IPO Br. at 17 ("applicants proceeding before the PTO strike a strategic balance, submitting evidence likely sufficient to obtain a patent while avoiding overburdening the PTO"). Indeed, the fact that the vast majority of applicants pursue an on-the-record appeal instead of a § 145 action indicates that applicants generally consider the evidence before the Patent Office to be sufficient. Where an applicant decides to pursue a § 145 action, this may reflect a belief that the application at issue is or could be especially commercially significant; in such a case, the applicant likely believes that the additional cost of a § 145 action may be merited. *See* AIPLA Br. at 1.

Next, the Director asserts that interpreting § 145 to allow applicants to freely introduce new evidence before the district court would disturb the rule that arguments waived in administrative proceedings may not be raised for the first time in federal court. We have held that, in general, parties may not raise issues in the district court that were not raised during the proceedings before the Patent Office or by the Board's final decision. *Conservolite*, 21 F.3d at 1102 (listing exceptions where courts may allow new evidence on new issues). However, this rule does not preclude parties from introducing additional *evidence* as to issues that were raised before the Patent Office. Here, the issue is written description—the subject of Mr. Hyatt's excluded declaration—and was raised

before the Patent Office.  Therefore, the doctrine of waiver is not applicable to this case.

## D.

We hold that new evidence is admissible in a civil action under 35 U.S.C. § 145, subject only to the Federal Rules of Evidence and Federal Rules of Civil Procedure. We now consider whether, under this standard, the district court abused its discretion in excluding Mr. Hyatt's declaration.

The district court found that Mr. Hyatt's failure to explain why he did not submit his declaration to the Patent Office was negligent.  Stating that it "need not consider evidence negligently submitted after the end of administrative proceedings," the court excluded Mr. Hyatt's declaration.  *Hyatt*, 2005 U.S. Dist. LEXIS 45319, at *26. The district court erred in determining that Mr. Hyatt's negligence affected admissibility and therefore abused its discretion in excluding the declaration.[4]

## CONCLUSION

For the reasons stated herein, the district court abused its discretion in excluding Mr. Hyatt's declaration. We therefore vacate the judgment of the District Court for the District of Columbia and remand for further proceedings consistent with this opinion.

### VACATED AND REMANDED

---

[4]    Nothing in *In re Alton*, 76 F.3d 1168 (Fed. Cir. 1996) is inconsistent with our decision today.  An applicant may respond to a written description rejection in whatever way the applicant deems effective.

# United States Court of Appeals for the Federal Circuit

---

**GILBERT P. HYATT,**
*Plaintiff-Appellant,*

v.

**DAVID KAPPOS, DIRECTOR, PATENT AND TRADEMARK OFFICE,**
*Defendant-Appellee.*

---

2007-1066

---

Appeal from the United States District Court for the District of Columbia in Case No. 03-CV-901, Judge Henry H. Kennedy, Jr.

---

NEWMAN, *Circuit Judge*, concurring in part, dissenting in part.

I join the en banc court's holding that new evidence may be provided in a civil action brought in the district court under 35 U.S.C. §145. However, the court also holds that when no new evidence is provided, the findings and rulings of the PTO receive the same deferential treatment in the district court as would apply if the cause were not a civil action under section 145, but instead were an Administrative Procedure Act direct appeal to the Federal Circuit under 35 U.S.C. §141. That is not the statutory plan.

The statutory plan is designed to differ from such a duplicative procedure, not to create it. Nonetheless, the court today holds that for those issues for which the applicant relies on the same evidence as was before the patent examiner, the ruling of the PTO is not determined *de novo* but is reviewed with APA deference, identically to the section 141 appeal, except that the decision is initially made by one judge in the district court, en route to three-judge review if appeal is then taken to the Federal Circuit. No party presented or even contemplated such a redundant procedure, and no *amicus* discussed it. It is contrary to statute, to precedent, and to almost two centuries of legislative policy.

Section 145 requires the district court to determine whether "such applicant is entitled to receive a patent for his invention . . . as the facts in the case may appear." Since it is a *de novo* proceeding, the PTO findings and fact-based rulings are not reviewed on the deferential "substantial evidence" standard, and the methodology of analysis of the evidence does not depend on whether the PTO had also received the same evidence. Although an applicant who chooses a section 145 civil action is quite likely to present new evidence as to some issues, on other issues the applicant may choose to reargue the evidence that was before the PTO.

Usually the evidence before the PTO consists of references cited during examination—with the applicant arguing, in a section 145 action, that the PTO misweighed or misapplied or misunderstood the evidence. Such issues are often present in a section 145 action, where they receive *de novo* determination, whether or not new evidence is adduced in the district court. The purpose of the section 145 proceeding is to achieve fresh judicial determination of patentability issues that had been decided by the Patent Office, and to conduct this determination *de novo* on the evidence

before the court, whether or not the same evidence or all of it was before the examiner. Thus, although this court's affirmation of the principle of the *de novo* section 145 action is salutary, somehow a new flaw has crept in. The court's promulgation of a different intellectual mechanism, depending on whether an issue did or did not receive evidence in addition to that which was before the examiner, creates a convoluted analytical process, a burden on the court as well as on objective analysis.

As the en banc court explains, the legislative purpose of the equity action was to assure that the courts had the last word as to entitlement to a patent. For a brief period after patent examination was renewed in 1836, only priority contests between competing inventors had judicial recourse. The Patent Act of 1839 extended judicial participation to "all cases where patents are refused for any reason whatever." As the patent statutes continued to receive legislative attention, the Court explained in *Butterworth v. Hoe*, 112 U.S. 50, 61 (1884):

> It is thereby provided that the applicant may have remedy by bill in equity. This means a proceeding in a court of the United States having original equity jurisdiction under the patent laws, according to the ordinary course of equity practice and procedure. It is not a technical appeal from the patent-office . . . confined to the case as made in the record of that office, but is prepared and heard upon all competent evidence adduced, and upon the whole merits.

The Court observed that "such *de novo* determination has been the uniform and correct practice in the circuit courts." *Id.*; *see, e.g., Ex parte Squire*, 22 F. Cas. 1015, 1016 (C.C.E.D. Mo. 1877) ("[T]he hearing is altogether independ-

ent of that before the commissioner, and takes place on such testimony as the parties may see fit to produce agreeably to the rules and practice of a court of equity.").

The Court's decision in *Dickinson v. Zurko*, 527 U.S. 150 (1999), applying the Administrative Procedure Act's standard of review to direct appeals to the Federal Circuit on the administrative record, did not deal with the section 145 civil action. Indeed, the APA recognized the preservation of previously existing judicial review mechanisms including those that provided for a trial *de novo*, stating that "[t]he form of the proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by the statute." 5 U.S.C. §703. The APA states that nothing in the judicial review provisions of the APA "limit[s] or repeal[s] additional requirements imposed by statute or otherwise recognized by law." 5 U.S.C. §559.

Neither the APA nor *Zurko* obliterated the purpose or changed the structure of the section 145 action as a full *de novo* proceeding. In preserving this traditional path, analogy is seen to tax refund suits in the district courts or the Court of Federal Claims, where "a refund suit is a *de novo* proceeding." *Democratic Leadership Council, Inc. v. United States*, 542 F. Supp. 2d 63, 70 (D.D.C. 2008); *see Vons Cos. v. United States*, 51 Fed. Cl. 1, 5 (2001) ("We begin with the axiomatic principle that tax refund cases are *de novo* proceedings. *Lewis v. Reynolds*, 284 U.S. 281, 283 (1932). Factual issues in such cases 'are tried . . . with no weight given to subsidiary factual findings made by the Service in its internal administrative proceedings.' *Cook v. United States*, 46 Fed. Cl. 110, 113 (2000). *See also Dixon v. United States*, 381 U.S. 68, 74–75 (1965).").

Such a *de novo* path, whether or not on the same evidence that was before the examiner, has long characterized

section 145 actions and its predecessor bills in equity. *See, e.g., Bernardin v. Northall*, 77 F. 849, 851 (C.C.D. Ind. 1897) ("The constitution and laws give a property right in his invention or discovery to an inventor, and it was the manifest legislative intent that such inventor should not be deprived of his property right in his invention until he had had his day in a court in which the party aggrieved by the determination of an executive officer might pursue his remedy judicially, according to the practice of a court of chancery.").

Legislation concerning the bill of equity/civil action consistently recognized that the proceeding is a "new suit." For example, in connection with the Patent Act of 1927 the Chairman of the House Committee on Patents, Congressman Albert H. Vestal, stated "if a party feels aggrieved, he can bring his suit in the equity court, but it is not an appeal. It is the bringing of a new suit." *To Amend Section 52 of Judicial Code and Other Statutes Affecting Procedure in Patent Office: Hearings on H.R. 6252 and H.R. 7087 Before the H. Comm. on Patents,* 69th Cong., 1st Sess. 36 (1926). The issues of patentability are determined in accordance with the laws of patentability, on original jurisdiction undisturbed by whether the same evidence was previously before the patent examiners. As summarized by Emerson Stringham, *Patent Interference Equity Suits* §7942, at 69 (1930): "A suit by a defeated applicant is an action *de novo* for the purpose of securing a patent."

No rule or protocol requires that the civil suit cannot receive *de novo* adjudication based on the same documentary evidence that was before the Patent Office. *See Central Ry. Signal Co. v. Jackson,* 254 F. 103, 105 (E.D. Pa. 1918) (observing that although the purpose of a proceeding under section 4915 "is to secure the issue of a patent, the issue of which has been refused, it does not seek that issue through

a reversal of the ruling first made, but through an independent finding that the applicant is entitled upon the merits of his application to a patent"). The Court has repeatedly confirmed this understanding. *See In re Hein*, 166 U.S. 432, 439 (1897) ("The bill in equity provided for by section 4915 is wholly different from the proceeding by appeal from the decision of the commissioner . . . . The one is in the exercise of original, the other of appellate, jurisdiction."); *Gandy v. Marble*, 122 U.S. 432, 439 (1887) ("[T]he proceeding by bill in equity, under section 4915, on the refusal to grant an application for a patent, intends a suit according to the ordinary course of equity practice and procedure, and is not a technical appeal from the patent-office, nor confined to the case as made in the record of that office, but is prepared and heard upon all competent evidence adduced, and upon the whole merits . . . ." (citing *Butterworth*, 112 U.S. at 61)).

The applicant may not wish, or need, to present new evidence as to every issue of patentability. P.J. Federico observed in his definitive article, "Evolution of Patent Office Appeals," that "[t]he bill in equity is not a technical appeal from a decision of the Patent Office, but is 'a suit according to the ordinary course of equity practice and procedure.'" 22 J. Pat. Off. Soc'y 838, 937 (1940). Such "ordinary course" takes up the issues that the examiner had decided adversely to the applicant, on whatever evidence the applicant and the Patent Office present to the district court. I have come upon no legislative or precedential hint that there should be judicial deference in the equity action to the examiner's findings for those issues upon which no new evidence is presented to the court.

The history of section 145 differs from that for priority contests between competing inventors, as discussed in *Morgan v. Daniels,* 153 U.S. 120 (1894), now relied on by

this court as meaning that in the absence of new evidence "the district court reviews the Patent Office fact findings for substantial evidence (i.e., according to the court/agency standard of review)." Maj. Op. 25. That interpretation is contrary to *Morgan v. Daniels* itself, for the Court there recognized that it was dealing with a different statute, "where the question decided in the Patent Office is one between contesting parties as to priority of invention." 153 U.S. at 125. Judicial review of priority contests is now codified at 35 U.S.C. §146, which expressly provides for admission of the PTO record to "have the same effect as if originally taken and produced in the suit." There is no similar provision in section 145, which instead requires the district court to adjudge entitlement to a patent "as the facts in the case may appear." Section 145 calls upon the independent judgment of the district court, whether the evidence before the court augments or simply repeats the evidence that was before the Patent Office.[1]

This court's new dual standard of evidentiary analysis in section 145 actions will not only come as a surprise to practitioners, but raises new problems of adjudication, for the weight of findings on various issues often must be balanced, in reaching the ultimate determination of patentability. I must, respectfully, dissent from this additional and unnecessary encumbrance on the patenting process.

---

[1]   The PTO Solicitor and my colleagues in dissent argue that applicants will deliberately withhold evidence in their possession, in order to spring it on the district court under section 145. I share the view of the *amici curiae* that it is unlikely that applicants will withhold winning evidence from the examiner, in favor of a multi-year and expensive civil action in the district court.

# United States Court of Appeals
# for the Federal Circuit

---

**GILBERT P. HYATT,**
*Plaintiff-Appellant,*

v.

**DAVID KAPPOS, DIRECTOR, PATENT AND
TRADEMARK OFFICE,**
*Defendant-Appellee.*

---

2007-1066

---

Appeal from the United States District Court for the District of Columbia in case No. 03-CV-901, Judge Henry H. Kennedy, Jr.

ON PETITION FOR REHEARING EN BANC

---

DYK, *Circuit Judge*, with whom GAJARSA, *Circuit Judge*, joins, dissenting.

In my view today's majority decision reflects a remarkable departure from settled principles of administrative law. The majority holds today that a patent applicant may decline to present his evidence supporting a patent application to the Patent and Trademark Office ("PTO"), the expert agency charged by Congress with reviewing patent applications. Instead, he may elect to present that evidence to a district court in a de novo proceeding. As the majority itself states, "We hold that 35

U.S.C. § 145 imposes *no limitation* on an applicant's right to introduce new evidence before the district court, apart from the evidentiary limitations applicable to all civil actions . . . ." Maj. op. at 5 (emphasis added). Moreover, when the district court considers that new evidence, it owes no deference to the PTO's resolution of the fact issues. Rather, the district court makes de novo findings of fact. *See id.*

The established administrative law standard, embodied in section 706 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, requires judicial review on the agency record and submission of all relevant evidence to the agency. In general, it permits supplementation in court only when agency procedures are inadequate. *See Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 414–20 (1971). Here, the agency procedures are inadequate only insofar as they do not provide for live testimony.

There is no question that Hyatt's affidavit evidence here could have been submitted to the Patent Office during the examination. The PTO rules specifically provide that "[w]hen any claim of an application . . . is rejected or objected to, any evidence submitted to traverse the rejection or objection on a basis not otherwise provided for must be by way of an oath or declaration under this section." 37 C.F.R. § 1.132. The Manual of Patent Examining Procedures recognizes that section 1.132 "sets forth the general policy of the Office consistently followed for a long period of time of receiving affidavit evidence traversing rejections or objections." MPEP § 716 (8th ed. Rev. 7, Sept. 2008).[1] But the examination proceedings are

---

[1] The PTO rules also provide that affidavits may be submitted after final rejection "upon a showing of good and sufficient reasons why the affidavit or other evidence

based on a paper record (except for interviews with the examiner). There is no provision for the receipt of live testimony from witnesses.

As discussed below, while section 145 contemplates the introduction of live testimony (because that testimony could not be submitted to the PTO), section 145 does not provide for a trial de novo or excuse the applicant from submitting affidavit evidence to the PTO. Limiting new evidence in the section 145 action to evidence, such as live testimony, that could not be presented to the PTO in the first instance would recognize that section 145 is fully consistent with traditional administrative law standards.

Allowing a trial de novo in the district court denigrates the important expertise of the PTO, is contrary to established principles of administrative law, finds no support in the language of the statute, and is contrary to decisions of at least five other circuits. The majority opinion invites applicants to deliberately withhold evidence from the PTO in favor of a more hospitable district court forum. Today's decision reflects yet another misguided effort to craft special rules for patent cases that the Supreme Court in other cases has held to be impermissible. *See eBay v. MercExchange, LLP*, 547 U.S. 388 (2006) (overturning this court's special test for issuing permanent injunctions in patent cases); *MedImmune v. Genetech, Inc.*, 549 U.S. 118 (2007) (rejecting this court's Declaratory Judgment Act test). The majority decision is all the more remarkable because the Court has previously rejected our efforts to craft a special rule for review of PTO decisions in *Dickinson v. Zurko*, 527 U.S. 150, 152 (1999), holding that review under section 141 must pro-

---

is necessary and was not earlier presented." 37 C.F.R. § 1.116(e).

ceed under the established administrative law substantial evidence standard. I respectfully dissent.

## I

The majority speaks hardly at all to the important expert role that the PTO plays in patent examination proceedings. The statute provides a variety of grounds for rejecting a patent application. In each case the inquiry is either entirely factual or has factual components. For example, questions involving anticipation, obviousness, indefiniteness, written description, and enablement typically involve fact questions that are beyond the knowledge of an ordinary layman, and must be addressed by those skilled in the particular art.

The PTO examiner corps and the Board of Patent Appeals and Interferences ("Board") possess such expertise, and the examination process is carefully structured to utilize that expertise. For example, when a patent application is received, the proposed invention is classified so that it can be given to the proper art unit, which then determines whether the application "properly belongs" in the unit and assigns the application to an examiner within the art unit with the expertise necessary to conduct a field search of the prior art. *See* MPEP §§ 903.02, 903.08, 904 (8th ed. Rev. 7, Sept. 2008). With respect to the Board, its Standard Operating Procedures state that the Chief Judge should "designate judges as the merits panel to decide ex parte appeals based upon their legal and technical expertise." B.P.A.I., Standard Operating Procedure 1 (Revision 13) (2009), *available at* http://www.uspto.gov/web/offices/dcom/bpai/sop1.pdf.

The importance of PTO expertise in the examination process is confirmed by the history of the statute. Although the original patent act provided for examination of patents, Act of Apr. 10, 1790, ch. 7, 1 Stat. 109, 112, three

years later, Congress abolished the examination of patents, and for the next three decades the United States operated under a regime of patent registration. *See* Act of Feb. 21, 1793, ch. 11, § 1, 1 Stat. 318; P.J. Federico, *Evolution of Patent Office Appeals*, 22 J. Pat. Off. Soc'y 838 (1940). This approach was found to be entirely unsatisfying.

The legislative history of the 1836 Act, substituting an examination system for the registration system, cites the following evils of the existing registration system:

> [1] A considerable portion of all the patents granted are worthless and void . . . ; [2] The country becomes flooded with patent monopolies, embarrassing to bona fide patentees, whose rights are thus invaded on all sides . . . ; [3] Out of this interference and collision of patents and privileges, a great number of lawsuits arise, which are daily increasing in alarming degree, onerous to the courts, ruinous to the parties, and injurious to society; [4] It opens the door to frauds, which have already become extensive and serious.

S. Rept. No. 24-338, at 3 (1836). In the new law in 1836, Congress created the Patent Office and the post of Commissioner of Patents, and this was intended to "establish a check upon the granting of patents, allowing them to issue only for such inventions as are in fact new and entitled, by the merit of originality and utility, to be protected by law." *Id.* at 4.

The system created by Congress relied heavily on the expertise of the Commissioner and his staff who were responsible for evaluating the merits of patent applications. *See* Act of July 4, 1836, ch. 357 at §§ 2, 7, 5 Stat.

117, 118–20. As the legislative history reveals, the purpose of the act was to bring specialized expertise to bear on questions of patentability:

The *duty of examination and investigation necessary* to a first decision at the Patent Office, is an important one, and *will call for the exercise and application of much scientific acquirement and knowledge of the existing state of the arts in all their branches, not only our own, but in other countries. Such qualifications in the officers charged with the duty, will be the more necessary and desirable, because the information upon which a rejection is made at the office, will be available in the final decision.* It becomes necessary, then, to give the Patent Office a new organization, and secure to it a character altogether above a mere clerkship. The competency and efficiency of its officers should correspond with their responsibility, and with the nature and importance of the duties required of them.

S. Rep. No. 24-338, at 4 (emphases added). An applicant dissatisfied with the Commissioner's decision could appeal to a "board of examiners" appointed by the Secretary of State. In creating the Board, Congress also drew on the expertise of those skilled in the art. At least one board member was "to be selected, if practicable and convenient, for his knowledge and skill in the particular art, manufacture, or branch of science to which the alleged invention appertains." Act of July 4, 1836, ch. 357 at § 7, 5, Stat. 117, 119–20. The de novo standard in today's decision will allow applicants to bypass the PTO expertise that

Congress viewed as critical to effective patent examination. [2]

## II

Today's decision not only departs from the Congressional design for the examination of patents. It also departs from settled principles of administrative law applicable to expert agency review generally and to the PTO in particular. The Supreme Court has emphasized that in general the PTO should be treated like other administrative agencies; that patent cases are subject to the same general administrative law principles under the APA; and that departure from those principles requires clear statutory language—language that is absent here. *See Zurko*, 527 U.S. at 161–65; *In re Comiskey*, 554 F.3d 967, 974 (Fed. Cir. 2009).

---

[2] Allowing the applicant to bypass PTO expertise is particularly problematic where, as here, the applicant submitted multiple applications over a long period with multiple claims and multiple rejections. The '702 application at issue in this case is one of at least 39 identical applications filed by Hyatt in 1995. Appellee's Brief at 3. Indeed, Hyatt appears to have a long history before the Board as well as this court. *See, e.g.*, *Hyatt v. Dudas*, 492 F.3d 1365, 1371 (Fed. Cir. 2007) (rejecting Hyatt's claim that the examiner failed to establish a prima facie case for a lack of written description); *In re Hyatt*, 211 F.3d 1367, 1371 (Fed. Cir. 2000) (rejecting Hyatt's claim that the Board failed to analyze the claims on an element-by-element and claim-by-claim basis and affirming the Board's anticipation determination); *In re Hyatt*, No. 87-1597, 1988 WL 57813. at *2 (Fed. Cir. 1988) (holding that the examiner raised substantial questions concerning enablement, shifting the burden to applicant, who failed to offer any competent evidence to overcome the examiner's prima facie case).

Except in very rare circumstances, judicial review of administrative action is based on the agency record. *See, e.g., Camp v. Pitts*, 411 U.S. 138, 141–42 (1973); *Overton Park*, 401 U.S. at 414–20; *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009) ("The focus of judicial review of agency action remains the administrative record, which should be supplemented only if the existing record is insufficient to permit meaningful review consistent with the APA."); 33 Wright & Koch, *Federal Practice and Procedure: Judicial Review of Administrative Action* § 8306 (2006) ("[E]xcept in the rare case, review in a federal court must be based on the record before the agency and, hence, a reviewing court may not go outside the administrative record.").

As the Supreme Court stated in *Overton Park*, the circumstances under which de novo review of factual issues is appropriate are "narrow" indeed. 401 U.S. at 414. One example of such an exception is when "the agency fact-finding procedures are inadequate."[3] *Id.* at 415. This same standard could apply to PTO review. As noted earlier, the PTO in examination proceedings generally can receive affidavit evidence but cannot receive live testimony. The PTO agrees that in such circumstances live testimony in district court may be appropriate. Appellee's Brief at 9 (noting an applicant can introduce new evidence that "the applicant could not reasonably

---

[3] Another exception enumerated in *Overton Park* is not applicable here. De novo review is also authorized "when issues that were not before the agency are raised in a proceeding to enforce nonadjudicatory agency action." 401 U.S. at 415. This exception does not apply to section 145 cases because new issues cannot be raised in a section 145 action. *See Newman v. Quigg*, 877 F.2d 1575, 1579 (Fed. Cir. 1989) (citing *DeSeversky v. Brenner*, 424 F.2d 857, 858 (D.C. Cir. 1970)).

have provided to the agency in the first instance"). For example, in a narrow class of cases under section 145, the outcome will hinge on credibility determinations, such as where there is a question about the date of reduction to practice. In such circumstances, PTO procedures may be inadequate and it makes sense to permit the district court to take live testimony under *Overton Park* to resolve credibility issues. Where credibility issues are not presented, however, there is nothing inadequate about the PTO factfinding process, and under general administrative law principles, the district court should be confined to the record presented to the PTO where the applicant could have presented the evidence in the first instance.[4]

The necessity of presenting evidence to the administrative agency in the first instance when the agency can receive the evidence is supported as well by principles of

---

[4] While the PTO states that "[w]e do not contend that an applicant's ability to introduce new evidence is limited to situations in which 'agency factfinding procedures are inadequate,'" Appellee's Brief at 19 n.4, there is little difference between the standard for the receipt of new evidence urged by the PTO and the standard I think is appropriate. The PTO agrees that new evidence that could not be submitted to the PTO may be introduced in district court. *Id.* at 29. In exceptional circumstances, the PTO apparently would allow other evidence in district court where there was a reasonable excuse for not submitting it to the PTO in the first instance and the evidence would be conclusive. *See id.* Those circumstances seem to be limited to situations where the evidence "in character and amount carries thorough conviction that the agency's decision was mistaken." *Id.* (internal quotation omitted). That describes situations where the failure to submit the evidence to the PTO would be harmless error. Where new evidence is discovered after the PTO proceeding and is presented to the district court, the district court in most instances should remand to the agency for its initial consideration.

administrative exhaustion, which require that evidence and arguments both be presented in the first instance to the agency. The ordinary rule is that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *McKart v. United States*, 395 U.S. 185, 194 (1969) (internal quotation omitted); *see Woodford v. Ngo*, 548 U.S. 81, 90 (2006). "Exhaustion concerns apply with particular force when the action under review involves exercise of the agency's discretionary power or when the agency proceedings in question allow the agency *to apply its special expertise*." *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992) (citing *McKart*, 395 U.S. at 194) (emphasis added). The majority ignores these important principles of administrative law, adopting a rule that effectively allows a patentee to decline to present his evidence supporting patent issuance to the PTO in the first instance.

## III

The majority's approach also finds no support in the language of the statute. Section 145 provides:

An applicant dissatisfied with the decision of the Board of Patent Appeals and Interferences in an appeal under section 134(a) of this title may, unless appeal has been taken to the United States Court of Appeals for the Federal Circuit, *have remedy by civil action* against the Director in the United States District Court for the District of Columbia if commenced within such time after such decision, not less than sixty days, as the Director appoints. The court may adjudge that such applicant is entitled to receive a patent for his invention, as specified in any of his claims involved in the decision of the Board of Patent Appeals and Interferences, as the facts in the case may appear

and such adjudication shall authorize the Director
to issue such patent on compliance with the re-
quirements of law.  All the expenses of the pro-
ceedings shall be paid by the applicant.

35 U.S.C. § 145 (emphasis added).[5]

Contrary to the majority, the language of section 145
providing for district court review does not in any way
suggest that the proceedings should be de novo rather
than generally on the agency record.  Even before the
1946 enactment of the APA, *see* Act of June 11, 1946, ch.
324, 60 Stat. 237, the Supreme Court had held that

---

[5]   The comparable provision for interference pro-
ceedings, section 146, provides:

Any party to an interference dissatisfied with the
decision of the Board of Patent Appeals and Inter-
ferences on the interference, *may have remedy by
civil action,* if commenced within such time after
such decision, not less than sixty days, as the Di-
rector appoints or as provided in section 141 of
this title, unless he has appealed to the United
States Court of Appeals for the Federal Circuit,
and such appeal is pending or has been decided.
In such suits the record in the Patent and Trade-
mark Office shall be admitted on motion of either
party upon the terms and conditions as to costs,
expenses, and the further cross-examination of the
witnesses as the court imposes, without prejudice
to the right of the parties to take further testi-
mony.  The testimony and exhibits of the record in
the Patent and Trademark Office when admitted
shall have the same effect as if originally taken
and produced in the suit.

35 U.S.C. § 146 (emphasis added).

provisions for district court or trial court review of agency action would not be read to imply the power to go outside the agency record.  For example, in *Tagg Bros. & Moorhead v. United States*, 280 U.S. 420 (1930), the Court held that although the Packers and Stockyards Act of 1921, 7 U.S.C. §§ 181–229, provided for suits to be brought in federal district court to enjoin the enforcement of agency orders, this did not imply a trial de novo.  280 U.S. at 444–45.  The Court explained:

> A proceeding under section 316 of the Packers and Stockyards Act is a *judicial review, not a trial de novo. The validity of an order of the Secretary, like that of an order of the Interstate Commerce Commission, must be determined upon the record of the proceedings before him . . . .* On all other issues his findings must be accepted by the court as conclusive, if the evidence before him was legally sufficient to sustain them and there was no irregularity in the proceeding.  *To allow his findings to be attacked or supported in court by new evidence would substitute the court for the administrative tribunal as the rate-making body.*  Where it is believed that the Secretary erred in his findings because important evidence was not brought to his attention, the appropriate remedy is to apply for a rehearing before him or to institute new proceedings.

*Id.* at 443–45 (emphases added; footnote omitted; citations omitted).

The Court disposed of similar arguments in the context of district court actions authorized by the judicial review provision of the Communications Act of 1934, 47 U.S.C. § 402(a).  *See Nat'l Broad. Co. v. United States*,

319 U.S. 190, 227 (1943). The statute initially provided for "suits in equity" to "enjoin, set aside, annul, or suspend any order or requirement of the Commission . . . ."[6] Communications Act of 1934, ch. 652, Title IV, § 402(a), 48 Stat. 1064, 1093. The Court held that such suits were not de novo, and the review was limited to the agency record: "The court below correctly held that its inquiry was limited to review of the evidence before the Commission. *Trial de novo of the matters heard by the Commission and dealt with in its Report would have been improper.*" *Id.* at 227 (emphasis added).

After enactment of the APA in 1946, the Supreme Court and other courts of appeals have repeatedly held that broad, general language such as "bill in equity" or "civil action" providing for trial court review does not create trial de novo, and that much more specific language is required. For example, in *United States v. Carlo Bianchi & Co.*, 373 U.S. 709 (1963), the Court held that "suit[s]" brought in the Court of Claims under the Wunderlich Act, Pub. L. No. 83-356, 68 Stat. 81 (1954),[7]

---

[6]    This statute was later amended to transfer jurisdiction to three-judge panels of the district courts under the Urgent Deficiencies Act of 1913, 38 Stat. 208, 219. A proceeding to set aside an order of the Commission under that act was also considered "a plenary suit in equity." *Columbia Broad. Sys., Inc. v. United States*, 316 U.S. 407, 415 (1942).

[7]    The statute provides:

No provision of any contract entered into by the United States, relating to the finality or conclusiveness of any decision of the head of any department or agency or his duly authorized representative or board in a dispute involving a question arising under such contract, shall be pleaded in any suit now filed or to be filed as limiting judicial review of any such decision to cases

were not trials de novo. 373 U.S. at 713–15 (1963). The Court noted that "the standards of review adopted in the Wunderlich Act—'arbitrary,' 'capricious,' and 'not supported by substantial evidence'—have frequently been used by Congress and have consistently been associated with a review limited to the administrative record." *Id.* at 715. The Court gave the following general rule:

> [T]he reviewing function is one ordinarily limited to consideration of the decision of the agency or court below *and of the evidence on which it was based*. Indeed, in cases *where Congress has simply provided for review, without setting forth the standards to be used or the procedures to be followed, this Court has held that consideration is to be confined to the administrative record and that no de novo proceeding may be held.*

*Id.* at 715 (emphases added). Similarly, in *Anderson v. District of Columbia*, 877 F.2d 1018 (D.C. Cir. 1989), the District of Columbia Circuit held that under the Individuals with Disabilities Education Act, which explicitly provides for a "civil action" in which the district court can hear "additional evidence at the request of a party," 20 U.S.C. § 1415(i)(2), "[t]he authority of the district court to receive new evidence does not transform the review proceedings into a trial de novo," 877 F.2d at 1025.

---

> where fraud by such official or his said representative or board is alleged: *Provided, however,* [t]hat any such decision shall be final and conclusive unless the same is fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence.

41 U.S.C. § 321 (emphasis in original).

There is only one feature that distinguishes actions under section 145 from agency review in other contexts. Congress has provided for a dual avenue of review—review in this court under section 141 based on the agency record and review under section 145. This suggests that the two types of review proceedings are different, and that evidence that could not be submitted to the PTO may be received in section 145 actions. But it does nothing to suggest that district court review may proceed on an entirely new record or hold de novo proceedings, or that Congress intended to do anything more than permit evidence to be presented in district court that could not be presented before the Patent Office.

The APA contemplates that statutes providing for de novo proceedings will specifically use that language. Under 5 U.S.C. § 706(2)(F), a reviewing court may "set aside agency action, findings, and conclusions" if "unwarranted by the facts[,] to the extent that the facts are subject to *trial de novo* by the reviewing court." Other federal statutes that have been held to provide for de novo review provide for such review explicitly. *See, e.g.*, Food Stamp Act, 7 U.S.C. § 2023(a)(15) ("The suit in the United States district court or State court *shall be a trial de novo* by the court in which the court shall determine the validity of the questioned administrative action in issue . . . .").[8] This distinction has been repeatedly recognized. For example, in *Ibrahim v. U.S.*, 834 F.2d 52 (2d Cir. 1987), the court held that,

_____

    [8]   *See also* 19 U.S.C. § 1592(e) (providing that, for review of customs penalties for negligence or fraud, "[n]otwithstanding any other provision of law, in any proceeding commenced by the United States in the Court of International Trade for the recovery of any monetary penalty claimed under this section . . . all issues, including the amount of the penalty, *shall be tried de novo*").

> [t]he Food Stamp Act's de novo review provision embodies a different and broader scope of review than that available under the APA . . . [Cases requiring review on the agency record are different because there,] no statute or regulation provided for de novo review.  The APA therefore governed. Here, in contrast, the Food Stamp Act specifically provides that review of FNS determinations 'shall be a trial de novo.'  7 U.S.C. § 2023(a).[9]

*Id.* at 53–54.

As these statutes demonstrate, when Congress intends review by de novo trial, Congress explicitly authorizes de novo trial.  In the absence of specific statutory authorization, "de novo review is generally not to be presumed."  *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 619 n.17 (1966).  Section 145 does not include language providing for "de novo" review or the equivalent.

The majority is unable to point to any Supreme Court authority that has construed a statute not providing explicitly for de novo review or the equivalent as providing for such review.  To be sure, the majority claims that *Chandler v. Roudebush*, 425 U.S. 840 (1976), recognizes de novo review based solely on the provision for a district court "civil action."  *See* Maj. op. at 31 ("Where the statute permits a 'civil action' in relation to agency actions, the

---

[9]   *See United States v. Ford Motor Co.*, 463 F.3d 1286, 1298 (Fed. Cir. 2006) (finding that even the explicit language of § 1592(e) should interpreted narrowly as providing for de novo review only of certain aspects of the customs determination, not to "permit an importer to end-run the protest provisions").

Supreme Court has held that this amounts to a trial de novo."). That is not accurate.

The *Chandler* Court found that the plain language (and legislative history) of that particular statute did provide for de novo review. *Chandler*, 425 U.S. at 844–46. The Civil Rights Act of 1964 provided for "civil action[s]" in district courts to redress discrimination against government employees. *Id.* at 844. Significantly, the statute also provided that "the provisions of section 706(f) through (k) as applicable shall govern civil actions brought hereunder." *Id.* at 844 (quoting 42 U.S.C. § 2000e–16(d) (1970 ed., Supp. IV)). Those sections, dealing with civil actions involving private employees, had repeatedly been interpreted as providing for a trial de novo based on specific language in the private employee provision. *Id.* at 844–45. The Court held that the incorporation of the private employee standard for a de novo trial meant that there was to be a trial de novo in government employee cases by virtue of the plain language of the statute. *Id.* at 845–46. The Court reasoned that the "terminology employed by Congress" in providing for a "civil action" in section 706, relating to private sector employees, "indicates clearly that the 'civil action' to which private-sector employees are entitled . . . is to be a trial de novo." *Id.* "Since federal-sector employees are entitled by § 717(c) to 'file a civil action as provided in section 706 [for private-sector employees]' . . . [and] the civil action provided in § 706 is a trial de novo, it would seem to follow syllogistically that federal employees are entitled to a trial de novo . . . ." *Id.* Thus, based on that plain language of the statute and its legislative history, it found the general presumption against de novo review inapplicable because "here . . . there is a 'specific statutory authorization' of a district court 'civil action,' which both the plain language of the statute and the legislative

history reveal to be a trial de novo." *Id.* at 862. There is no support for reading "civil action" language, standing alone, as requiring a trial de novo. The Supreme Court's decision in *Chandler* supports that well-established rule.

## IV

Additionally, the legislative history of the predecessor of section 145, when enacted in 1927, provides no support for the majority's interpretation of the statutory text. The majority relies wholly on hearing testimony. As the Supreme Court stated in *Kelly v. Robinson*, 479 U.S. 36 (1986), the Court has declined "to accord any significance to . . . statements" made in hearings. 479 U.S. at 51 n.13. Earlier, in *McCaughn v. Hershey Chocolate Co.*, 283 U.S. 488 (1931), the Court noted, "such individual expressions [as statements made in committee hearings] are with out weight in the interpretation of a statute." *Id.* at 493–94. The majority's decision here flies in the teeth of this established principle.

Even if the statements in Committee hearings could be considered relevant legislative history, the materials cited by the majority would be entitled to little weight. The 1927 legislation was based initially on a proposal drafted by the American Bar Association. *To Amend Section 52 of the Judicial Code and Other Statutes Affecting Procedure in the Patent Office: Hearings on H.R. 6252 and H.R. 7087 Before the H. Comm. On Patents*, 69th Cong. 14 (February 1926) [hereinafter *To Amend Section 52*]. The purpose of the proposal was to simplify the appeals procedure both within the Patent Office and in the courts. *Id.* at 3. Under section 4915 (section 145's predecessor) as it then existed, an appeal could be taken from the Patent Office decision to the Supreme Court of the District of Columbia. Act of March 2, 1927, ch. 273, § 11, 44 Stat. 1335, 1336–37. Thereafter a "bill in equity"

proceeding could be brought to set aside the Patent Office decision in district court. *Id.* The bills initially proposed to eliminate the appeal to the Supreme Court of the District of Columbia and to rely entirely on the bill in equity as the form of judicial review. *To Amend Section 52,* at 9.

Hearings were initially held in February of 1926 in the 69th Congress, First Session, on two separate bills. *Id.* at 1–2; *see To Amend the Statutes of the United States as to Procedure in the Patent Office*: *Hearings on H.R. 7563 and H.R. 13487*, 69th Cong. 5 (Dec. 1926) (explaining the prior hearings) [hereinafter *Procedure in the Patent Office*]. The quotes from the majority are taken entirely from the February 1926 hearings on bills that were not enacted into law insofar as they concerned revisions to section 4915.[10] The Commissioner of Patents objected to various provisions of the bill, and new bills were drafted reflecting substantial changes, including the creation of two alternative avenues for review—an appeal to the Court of Appeals for the District of Columbia based on the Patent Office record and the "bill in equity" procedure that would receive the full Patent Office record but allow supplementation.[11] Those February 1926 hearings

[10] The only bill that was enacted (H.R. 6252) concerned amendments to the jurisdictional rules in Section 52 of the judicial code and allowed parties in a 4915 action, if they resided in different districts, all to bring suit in the Supreme Court of the District of Columbia. Act of March 3, 1927 ch. 364, 44 Stat. 1394.

[11] A.C. Paul, Chairman of the Legislation Committee of the Patent Section of the American Bar Association explained, "We had a hearing before the committee on February 4, 1926. At that time some provisions of the bill were objected to by the commissioner, and after a hearing, as chairman of the legislation committee of the patent section of the American Bar Association, I undertook to see if we could get together and reconcile the views of the

were unlikely to be considered by members of Congress voting on a new and quite different bill in the subsequent session.

New hearings were held in December 1926 on the bill that ultimately became law (S. 4812 and H.R. 13487). In those hearings, both proponents of section 4915 (from the bar) and opponents (from the Patent Office) described the motivation for the new legislation in identical terms. While the bill in equity was characterized by some as a "de novo" proceeding or as "starting all over,"[12] those statements did not suggest that the Patent Office could be bypassed in the presentation of evidence. Indeed, the proponents viewed section 145 proceedings as involving review of PTO decisions. A.C. Paul, the Chairman of the legislation committee of the patent section of the American Bar Association viewed it as "practically another appeal." *See, e.g.*, *Procedure in the Patent Office*, at 8. Three features are significant. First, the statute, unlike the existing provision, allowed the Patent Office record to be received in section 4915 interference proceedings, and the hearings noted the benefits of using the Patent Office record in the bill of equity proceeding. For instance, Otto Barnett explained that the bill "for the first time . . . provided that in [the bill of equity proceeding] you may use the testimony taken in the Patent Office" and that the new law was preferable because "under the present law it

---

commissioner and the members of the committee, and we had negotiations extending over a number of months." *Procedure in the Patent Office*, at 5.

[12]    Procedure in the Patent Office, at 11 (statement of Hon. Thomas E. Robertson, Comm'r of Patents); Amending the Statutes of the United States as to Procedure in the Patent Office: Hearings on S. 4812, 69th Cong. 10 (December 1926) (statement of Thomas E. Robertson, Comm'r of Patents) [hereinafter Senate Hearings].

is all lost, and you have to start a new record." *Senate Hearings*, at 13 (Statement of Otto R. Barnett).

Second, even more significantly, the purpose of the bill was described as permitting the presentation of live testimony in the bill in equity proceeding because it could not be submitted before the Patent Office.[13]  For example, Edward S. Rogers explained,

> There was a faction . . . who were in favor of doing away with section 4915 [the predecessor of section 145] . . . . It was thought inadvisable to do so, because the court, in hearing cases, will see the witnesses.  *The testimony in the Patent Office hearings is all taken by deposition, and you cannot take the bearing of a man in a deposition, and frequently there are clashes in the testimony and lapses of memory, if not actual perjury.  So it seems quite necessary to have the men who are to testify put on the stand in court.*

*Senate Hearings*, at 15 (statement of Edward S. Rogers) (emphasis added). Similarly, Commissioner of Patents Robertson noted,

> My own preference would be to repeal entirely section 4915 . . . but the bar unquestionably wants that section 4915 to continue, because *it does*

---

[13]    The prevailing situation had been described in the earlier hearing as follows: "[E]ach applicant [in interference proceedings] is allowed to put in as much testimony as he wishes, but they do not have the same cross-examination privileges that they have in open court . . . . In ex parte cases, there is no testimony except affidavits." *To Amend Section 52*, at 37 (statements of Alexander J. Wedderburn, Patent Att'y & Karl Fenning, former Assistant Comm'r of Patents).

> *permit bringing the witnesses in open court which*
> *we can not have under the present procedure in the*
> *Patent Office* and so we have all agreed . . . .

*Procedure in the Patent Office*, at 11 (statement of Thomas E. Robertson, Comm'r of Patents) (emphasis added).[14] The purpose of the new legislation would be entirely served by allowing in the trial court only evidence that could not have been submitted to the Patent Office, such as live testimony.

Third, there was no suggestion in the December 1926 hearings, as there was in the February 1926 hearing, that applicants in the bill in equity could "bring[] in evidence that they could have brought in before [the Patent Office] but did not." *To Amend Section 52*, at 81 (statement of Thomas E. Robertson, Comm'r of Patents). That latter statement was made by the Commissioner of Patents only in February 1926 in his opposition to the bill. The omission of such statements in later hearings could well be explained by the Commissioner's receiving assurances in negotiations over the bill that it did not go that far. In any event, the earlier statement cannot be afforded any weight. As the Supreme Court noted in *Bryan v. United States*, 524 U.S. 184 (1998), "the fears and doubts of the opposition are no authoritative guide to the construction of legislation. In their zeal to defeat a bill, they under-

---

[14]   Commissioner Robertson also stated that "[t]he judges who decide these cases have never seen the witnesses [but if you] want a trial de novo under section 4915 you can force your opponent to come under section 4915 so that the *witnesses can be seen in court and have the testimony decided by the judges who actually see the witnesses as they testify*." *Procedure in the Patent Office*, at 14 (statement of Thomas E. Robertson, Comm'r of Patents) (emphasis added).

standably tend to overstate its reach." 524 U.S. at 196 (citations, brackets, and quotation marks omitted).

Far more pertinent than the committee hearings in connection with the 1927 Act is the history of the 1952 codification. As I discuss below, at the time of the 1952 codification the courts had uniformly rejected a de novo standard in interpreting section 4915. It is fair to assume that Congress approved that interpretation in codifying the section. Congress explicitly stated that codification of section 145 made "no fundamental change in the various appeals and other review of Patent Office action . . . ." S. Rep. No. 82-1979 (1952), *reprinted in* 1952 U.S.C.C.A.N. 2394, 2400. The Supreme Court has recognized that the "evaluation of congressional action . . . must take into account its contemporary legal context," *Cannon v. Univ. of Chi.*, 441 U.S. 677, 698–99 (1979), and that "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change," *Lorillard v. Pons*, 434 U.S. 575, 580 (1978).

V

The earlier Supreme Court cases relied on by the majority do not suggest a different construction. None of the cases cited by the majority held that any and all evidence could be admitted without regard to whether it was submitted to the Patent Office. *Hoover Co. v. Coe*, 325 U.S. 79 (1945), merely states that section 145 allows for an action "on proof which *may* include evidence not presented in the Patent Office." 325 U.S. at 83 (emphasis added). Similarly, *Gandy v. Marble*, 122 U.S. 432 (1887), merely noted that section 4915 was "not a technical appeal from the patent-office, nor confined to the case as made in the record of that office" and did not explicitly

state there were no limits on the evidence introduced. 122 U.S. at 439.

The majority, however, places emphasis on language in *Butterworth v. Hoe*, 112 U.S. 50 (1884), stating that in an action under section 4915 of the Revised Statutes (section 145's predecessor):

> Further provision, covering such and also all other cases in which an application for a patent has been refused, either by the commissioner of patents or by the supreme court of the district, is found in Revised Statutes, § 4915. It is thereby provided that the applicant may have remedy by bill in equity. This means a proceeding in a court of the United States having original equity jurisdiction under the patent laws, according to the ordinary course of equity practice and procedure. *It is not a technical appeal from the patent-office, like that authorized in section 4911, confined to the case as made in the record of that office, but is prepared and heard upon all competent evidence adduced, and upon the whole merits.* Such has been the uniform and correct practice in the circuit courts. *Whipple v. Miner*, 15 Fed. Rep. 117; *Ex parte Squire*, 3 Ban. & A. 133; *Butler v. Shaw*, 21 Fed. Rep. 321.

*Butterworth*, 112 U.S. at 61 (emphasis added).

In fact, *Butterworth* is no help to the majority for several reasons. First, *Butterworth* and the cases that it cited were all interference cases. Pre-1927 decisions of the Supreme Court and other courts in interference proceedings concerning the ability and necessity of creat-

ing a new record in bill in equity proceedings are of no
value in interpreting the 1927 legislation. That legisla-
tion worked a major change on interference proceedings.
The 1927 law explicitly provided that, for the first time,
the PTO record would be received in the bill in equity
interference proceedings and that "when admitted shall
have the same force and effect as if originally taken and
produced in the suit." Act of March 2, 1927, ch. 273, § 11,
44 Stat. 1335, 1337 (1927). Previously in the bill in equity
proceedings, the Patent Office record, because of the
informal procedures followed in the Patent Office, was
viewed as having secondary value, and it was necessary to
create a new *duplicate* record in the trial court.[15] This
was recognized both in the hearings on the 1927 legisla-
tion (as noted above) and in subsequent court cases. As
the Third Circuit explained,

> [T]he evidence given in the interference proceed-
> ings could be introduced only as secondary evi-
> dence, after proper foundation laid. The
> competency of such evidence had to be determined
> according to the principles of equity jurispru-
> dence. In other words, the witnesses who had tes-
> tified in the interference proceedings had to
> testify anew in the suit in the district court. If
> they did not so testify their absence had to be ac-
> counted for in the usual way if the testimony
> taken in the interference was to be received as
> secondary evidence. The [1927] amendment was
> passed to avoid this arduous and expensive means
> of reproducing the evidence of the interference
> proceedings in the suit.

---

[15]    To be sure, in some cases the case did proceed
based on the PTO record. *See, e.g.*, *Morgan v. Daniels*,
153 U.S. 120, 124 (1894).

*Gen. Talking Pictures Corp. v. Am. Tri-Ergon Corp.*, 96 F.2d 800, 812 (3d Cir. 1938) (citations omitted). Under these circumstances, pre-1927 court cases naturally referred to the creation of a new record in the bill in equity proceedings. Under the 1927 legislation the creation of a new record in interferences became unnecessary. The legislation provided that the Patent Office record would be received and left it to the trial court to determine what additional cross examination and new testimony could appropriately be received.[16]

Second, *Butterworth* did not address the question whether evidence was required to be submitted to the Patent Office in the first instance if it was later to be used in bill in equity proceedings. The sole issue decided in

---

[16] Although sections 145 and 146 stem from the same root, namely, R.S. § 4915, they are distinct because they have different content and contain different procedures for admitting evidence. In section 145 ex parte proceedings, the Patent Office is a direct party to the action whereas in section 146 interferences, the two private parties to the interference are the parties in interest. Section 146 explicitly addresses the optional procedure for admitting the entire administrative record, and such language is absent from section 145 because the administrative record is automatically admitted in judicial review proceedings. Thus, it is inaccurate to conflate sections 145 and 146 with regard to admissibility. Section 145 could be construed as a "mongrel" cause of action in the same sense that claim construction is "a mongrel practice," as Justice Souter noted in *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 378 (1996). Once again, as in *Zurko*, the majority is attempting to develop a distinction between patent administrative law and the traditional administrative agency procedure. In doing so, it fails to focus on the core of the matter, namely the discretion of a district court regarding the admissibility of evidence in a section 145 case.

*Butterworth* was whether the Secretary of the Interior could override the Patent Office decision approved by the court in a proceeding under section 4915. 112 U.S. at 54, 62, 68–69. The language of *Butterworth* is at best ambiguous. Like the other Supreme Court cases, it recognizes that new evidence may be received and considered in the trial court proceedings, *id.* at 61, but it says nothing about whether that evidence had to be submitted to the Patent Office in the first instance if such a submission were possible.

The three cases cited in *Butterworth* are no more illuminating. *Whipple* simply held that the trial court proceeding was an "original proceeding" and that the trial court could generally not enjoin issuance of a patent pending its outcome. 15 F. at 117–18. *Butler* held that for interference cases the 4915 proceeding could be invoked without first appealing to the Supreme Court of the District of Columbia, and noted that "the court may receive new evidence and has the same powers as in other cases in equity." 21 F. at 326–27. Again, what new evidence could be heard remained unclear. In the third case the court rejected the contention that the court was confined entirely to the record before the Patent Office, holding that in addition to the Patent Office records "new and additional testimony" could be received in the equity proceedings. *In re Squire*, 22 F. Cas. at 1016. But again, the court was considering only a proposed blanket bar on new evidence; it did not consider whether the substance of testimony could be withheld from the Patent Office in the agency proceeding if the Patent Office could receive and consider it.[17]

---

[17]    The language quoted by the majority is not in fact from *Squire* itself but from the earlier case of *Atkinson v. Boardman* quoted in *Squire* as part of the background

Third, *Butterworth*'s reference to "the ordinary course of equity practice and procedure" and "competent evidence" suggests meaningful limits on the admissibility of new evidence in section 4915 proceedings. *See* 112 U.S. at 61. As the Supreme Court explained in *Morgan v. Daniels*, a bill in equity[18] in the context of section 4915 was

> *an application to the court to set aside the action of one of the executive departments of the government.* The one charged with the administration of the patent system had finished its investigations and made its determination with respect to the question of priority of invention. That determination gave to the defendant the exclusive rights of a patentee. A new proceeding is instituted in the courts—a proceeding to set aside the conclusions reached by the administrative department, and to give to the plaintiff the rights there awarded to the defendant. *It is something in the nature of a*

---

description. *See Atkinson v. Boardman*, 2 F. Cas. 97 (C.C.N.Y. 1851).

[18] A "bill in equity," also termed a "bill of complaint," was the initial pleading that invoked the jurisdiction of the courts of equity. *See* Federal Equity Rule 25 (1913). Equity courts recognized various species of bills, depending on the nature of the relief sought. The "bill of review" was a type of bill in equity seeking a reversal or modification of a prior decree or judgment. *See, e.g., Kingsbury v. Buckner*, 134 U.S. 650, 671–72 (1890); *Thompson v. Maxwell*, 95 U.S. 391, 395–96 (1877) ("It is manifest that the object of this bill, especially after being amended, was to set aside the decree made in the original cause, and to substitute therefor a new decree supposed to be more advantageous to the complainants, upon the same matters which were before the court and under its consideration in the said cause. Under the guise of a bill for quieting title it was in reality a bill of review.").

> *suit to set aside a judgment*, and, as such, is not to be sustained by a mere preponderance of evidence.

153 U.S. 120, 124 (1894) (emphases added); *see also Fregeau v. Mossinghoff*, 776 F.2d 1034, 1037 (Fed. Cir. 1985) (applying *Morgan* to section 145 and noting that "an action under § 145 is . . . in essence a suit to set aside the final decision of the board, like the bill in equity from which it was derived"). Under settled principles of federal equity practice, a court presented with a bill to set aside a prior judgment would not rehear arguments or evidence that had been adjudicated in the prior proceeding, nor would it consider evidence that could have been produced during that proceeding in the exercise of reasonable diligence. Rather, the court would limit its review to (1) legal errors apparent on the face of the decree and (2) new evidence of such compelling character as to call into doubt the outcome of the prior proceeding. *See, e.g.*, *Beard v. Burts*, 95 U.S. 434, 436 (1877); *Scotten v. Littlefield*, 235 U.S. 407, 411 (1914).

In *Beard*, the Court explained:

> To sustain a bill of review, there must be errors of law apparent on the face of the decree, or some *new matters of fact material in themselves, and discovered after the rendition of the decree.* This is the general rule in equity . . . . The facts are not open for a re-trial, unless the bill asserts that new evidence has been discovered, not obtainable before the first trial by the exercise of reasonable diligence.

*Beard,* 95 U.S. at 436 (emphasis added).[19]  Thus, federal courts in equity rejected attempts to litigate, through a bill of review, factual questions that could have been raised in the prior proceeding.  *See id.* at 436; *Purcell*, 71 U.S. (4 Wall.) at 521 (rejecting petitioner's bill in equity because the complainant "offers no new evidence, but what he might as well have produced before").  These basic principles of equity practice would have been familiar to Congress in 1836, when it first authorized a "remedy by bill in equity" for applicants aggrieved by the final determination of the Commissioner of Patents.  *See* Act of July 4, 1836, ch. 357, § 17, 5 Stat. 117, 124.  Thus, the ordinary rules of equity practice tolerated nothing like the de novo relitigation that the majority adopts.

Finally, and most significantly, none of the cases subsequent to *Butterworth* has interpreted it, or the cases that it cited, to require de novo review under the 1927 legislation.  The Supreme Court has never directly addressed the de novo review issue.  The only Supreme Court case to address the scope of section 145 after passage of the 1927 Act, *Dickinson v. Zurko*, 527 U.S. 150 (1990), does not address the issue of the scope of section 145 with regard to new evidence.  *Zurko* involved the

---

[19]  *See also Scotten*, 235 U.S. at 411 (explaining that a bill of review encompassed only manifest legal errors and "new facts discovered since the decree, which should materially affect the decree and probably induce a different result"); *Purcell v. Miner*, 71 U.S. (4 Wall.) 519, 521 (1866) ("By Lord Chancellor Bacon's rules, it was declared: 'No bill of review shall be admitted except it contain either error in law appearing in the body of the decree without further examination of matters in fact, or some new matter which hath arisen in time after the decree; and not on any new proof which might have been used when the decree was made."); *Whiting v. Bank of United States*, 38 U.S. (13. Pet.) 6, 13–14 (1839).

question of what was the proper standard of review on direct appeal to the Federal Circuit under 35 U.S.C. § 141. *Id.* at 152–53. Although the Supreme Court noted that a section 145 claimant can "present to the court evidence that the applicant did not present to the PTO," the Court said nothing about when or under what circumstances such evidence could be introduced. *See id.* at 164. The decision in *Zurko* in fact undermines the majority's holding both by recognizing the importance of applying traditional administrative law principles to the PTO and in recognizing that the "PTO is an expert body" that "can better deal with the technically complex subject matter" of patent applications than the federal courts. *Id.* at 160. As will be seen in the next section, *Butterworth* has never been seen by other courts of appeals as barring limitations on new evidence that could have been presented to the Patent Office under the 1927 Act.

## VI.

The majority opinion is, in fact, contrary to decades of circuit authority under the 1927 legislation, after *Butterworth*, recognizing limits on the admissibility of new evidence in section 145 and section 146 proceedings. One of the more influential cases on the admissibility of evidence is *Barrett Co. v. Koppers Co.*, 22 F.2d 395 (3d Cir. 1927), decided several months after the passage of the 1927 legislation. There, during interference proceedings in the Patent Office, the Barrett Company instructed its employees not to answer questions about certain of its "commercial practices." *Id.* at 396. The Barrett Company lost the interference, and then filed a bill in equity under Revised Statutes § 4915 and sought to introduce before the district court the exact testimony it had instructed its employees not to provide during the interference. *Id.* The Third Circuit found that the district court properly excluded this evidence, saying:

The law gave the plaintiffs a day in court on the issue of priority. That was the day the interference was heard and if they chose not to avail themselves of their full rights but to gamble on the decision by giving only a part, and the weaker part, of the evidence they had in hand, they did it at their own risk. After losing on such evidence in what otherwise would be a train of futile appeals in the patent tribunals and Court of Appeals of the District of Columbia they cannot come into a District Court and say, now for the first time we shall tell the true story of reduction to practice and demand a patent.

. . . When, as in this case, a party has refused to produce evidence for consideration by the Court of Appeals of the District of Columbia and then in the statutory action under section 4915, R.S., *produces that very evidence to overcome the effect of that court's decision, he comes very close to trifling with the courts' processes.* If in this case the Court of Appeals of the District of Columbia was wrong it was because the plaintiffs purposely kept it in the dark. If now this court were in effect to reverse the decision of that court on evidence brought to light for the first time, we should be assisting the plaintiffs to profit by their own technical wrong doing.

. . . Particularly are we anxious that no one should think that we hold that any evidence not before the Court of Appeals of the District of Columbia is inadmissible in an action under section 4915, R.S. Such a notion would destroy the action given by section 4915, R.S. and throw overboard the whole doctrine of *Morgan v. Daniels.* Specifically our decision is that the plaintiffs in this action under

section 4915, R.S., are *estopped to offer evidence which was wholly within their possession and control at the interference proceeding* and which they withheld from that proceeding and, therefore, withheld from the other patent tribunals and the Court of Appeals of the District of Columbia, and thereby made it impossible for those tribunals and that court to render what they, the plaintiffs, now maintain is the right decision.

*Id.* at 397 (formatting altered; emphasis added).

Subsequent to *Barrett*, three circuits—the District of Columbia, the Seventh, and the Eighth—have essentially followed the *Barrett* rule. The District of Columbia Circuit in *Cal. Research Corp. v. Ladd*, 356 F.2d 813 (D.C. Cir. 1966), adopted a negligence standard to limit the introduction of new evidence in a section 145 proceeding and explained that a section 145 action "may not be conducted in disregard of the general policy of encouraging full disclosure to administrative tribunals." *Id.* at 821. The Seventh Circuit adopted a "reasonably diligent" standard for determining whether evidence is admissible in a section 146 interference proceeding. In *Velsicol Chem. Corp. v. Monsanto Co.*, 579 F.2d 1038 (7th Cir. 1978), it held "that absent special circumstances, the proper question for the district court was whether the failure of the proponent of the additional evidence to uncover its existence earlier or to procure it for the interference proceeding occurred in spite of the proponent's diligence in preparing his case before the Board." *Id.* at 1046. The court cited the "policy of encouraging full disclosure" to the administrative tribunal as the reason for this limitation. *Id.*; *see also Globe-Union v. Chi. Tel. Supply Co.*, 103 F.2d 722, 728 (7th Cir. 1939) ("We do not

dispute the soundness of the proposition that all pertinent evidence, actually available, should be submitted in the first instance.  To permit partial presentation before the Patent Office is to sanction *the destruction of administrative justice.*" (emphasis added)).

The Eighth Circuit adopted the rule that "deliberate, intentional, or willful withholding or suppression of pertinent and available evidence from the Patent Office, whether attended by reprehensible motives or not, whether it be for tactical or other reasons, justifies exclusion of such evidence in a section 146 proceeding." *Kirschke v. Lamar*, 426 F.2d 870, 874 (8th Cir. 1970).  The court reasoned that a section 146 proceeding was not a "full trial de novo; rather, allowance of evidence in addition to the Patent Office record must be tempered and circumscribed to some degree to effectuate the policy favoring full disclosure to administrative tribunals." *Id.*

Although subsequent to *Barrett* the Third and Second Circuits limited the exclusion to testimony intentionally suppressed, their holdings too are inconsistent with the majority's approach here.  The Third Circuit continued to hold that intentionally suppressed evidence must be excluded.[20]  The Second Circuit, which originally ap-

---

[20]  *See Minn. Mining & Mfg. Co. v. Carborundum*, 155 F.2d 746, 748 (3d Cir. 1946) (distinguishing *Barrett* and allowing expert testimony that was not intentionally suppressed at the time of the Patent Office proceedings).  Although another later Third Circuit case, *Standard Oil Co. v. Montedison, S.P.A.*, 664 F.2d 356, 376 (3d Cir. 1981), stated that "new expert testimony is clearly admissible in a section 146 proceeding without [showing special circumstances explaining why the testimony was not presented first to the Board] to the extent that it aids the court in understanding issues presented to the Board," the court was apparently responding to an

proved of *Barrett*, *see Greene v. Beidler*, 58 F.2d 207, 208–09 (2d Cir. 1932), later suggested an exclusion might be limited to evidence "suppressed," not "merely neglected through the plaintiff's slackness in preparation," *Dowling v. Jones*, 67 F.2d 537, 538 (2d Cir. 1933).

Not a single court of appeals case has interpreted section 145 as permitting the submission of any and all new evidence. Although the cases suggest varying standards for the admission of new evidence, they all acknowledge the necessity of establishing significant limitations on the admission of new evidence, and recognize that to provide otherwise would undermine the requirement of administrative exhaustion. Today's decision represents an anomalous and unjustified departure from prevailing circuit authority.

## VII

The majority suggests that one should not be too concerned about its special rule for patent cases because general evidentiary principles will somehow allow the district court to discount evidence not submitted to the PTO and thus reach the same result at least in some cases. *See* Maj. op. at 30–31. This approach is remarkably similar to the argument rejected in *Zurko* where it was suggested that there was no meaningful difference between the APA substantial evidence standard and the clearly erroneous standard for review of PTO decisions. The Supreme Court concluded that while the differences were "subtle" and might not affect many cases, the differences were nonetheless important. *Zurko*, 527 U.S. at 161–65. Even if here the majority were right as to the consequences, this would not support application of the wrong law, as *Zurko* makes clear.

---

attempt by the objecting party to place the burden of justifying the evidence on the party offering it.

But the majority is not right as to the consequences, and there is nothing subtle about the difference between excluding evidence and admitting it. The evidentiary cases cited by the majority offer no support for discounting evidence not submitted to the PTO on grounds that it would be too costly to do so, and the majority offers applicants a ready made excuse—the costs of making a full record before the PTO— for the withholding of evidence under such circumstances.[21] The rules of evidence do not remotely offer a different path to the same result.

In conclusion, I note the quite arresting policy argument made by the majority for permitting applicants to bypass the PTO—that the applicant would bypass the PTO in favor of a de novo district court proceeding only in cases where the patent is commercially significant and the costs of a separate proceeding can be justified. *See* Maj. op. at 30–31. But those are exactly the cases in which PTO review is most important. In such cases, contrary to the majority, it is not somehow fantastic to imagine that applicants will elect to bypass the PTO in

---

[21] The majority suggests that two cases from the turn of the last century recognize that "courts have considered an applicant's failure to introduce evidence before the Patent Office in determining what weight to afford to the evidence." Maj. op. at 30. The limited holdings of these cases impose no meaningful limits. The first simply recognizes that a witness' new explanation, not offered in his Patent Office declaration, was not credible. *W. Elec. Co. v. Fowler*, 177 F. 224, 228–29 (7th Cir. 1910). The second recognizes that prior consistent declarations of a witness in the PTO proceeding, only introduced in district court after the witness had died, would be given little weight in evaluating the witness' earlier testimony. *Standard Cartridge Co. v. Peters Cartridge Co.*, 77 F. 630, 638 (6th Cir. 1896). These cases impose no limit on new evidence presented by new witnesses whose declarations were not supplied to the PTO.

favor of a second bite at the apple in the district court. They will do so exactly in those circumstances where an expert agency would reject the evidence but a non-expert district court might be convinced to accept it. A more pernicious approach is difficult to imagine.